**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Millard BOWIE, Defendant–Appellant.**

**Nos. 87–2461, 88–2374.**

United States Court of Appeals, Tenth Circuit.

Jan. 8, 1990.

---

Clyde Kirk (Gene Stipe, with him on the brief) of Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN, SETH, and ANDERSON, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Millard Bowie was convicted by a jury on one count of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and five counts of using a telephone to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b). On appeal, defendant challenges his conviction on the following grounds: (1) the trial court erred in denying defendant's motion for judgment of acquittal at the close of the government's case; (2) the

government improperly vouched for and bolstered the credibility of its witnesses; and (3) defendant was denied his Sixth Amendment right to effective assistance of counsel because of his trial counsel's conflicts of interest.

## I

At the close of the government's case-in-chief, defendant demurred to the evidence, which we construe as a motion for judgment of acquittal under Fed.R.Crim.P. 29(a). *See Corbin v. United States*, 253 F.2d 646, 647 (10th Cir.1958). After the district court denied the motion, defendant presented evidence but failed to renew his motion at the close of all evidence. Defendant now contends that the district court erred in denying his motion.

■ This circuit follows the waiver rule, whereby

"a defendant who moved for a judgment of acquittal at the close of the government's case must move again for a judgment of acquittal at the close of the entire case if he thereafter introduces evidence in his defense because, by presenting such evidence, the defendant is deemed to have withdrawn his motion and thereby to have waived any objection to its denial."

*United States v. Lopez*, 576 F.2d 840, 842 (10th Cir.1978); *see also United States v. Price*, 795 F.2d 61, 63 (10th Cir.1986). This is of little moment, however, because even if the acquittal motion is renewed at the close of all evidence, we have held that by presenting evidence a defendant waives the right to have the sufficiency of the evidence tested by the government's case alone. *E.g., United States v. Alfonso*, 738 F.2d 369, 372 (10th Cir.1984); *United States v. Guerrero*, 517 F.2d 528, 530 (10th Cir.1975). And if no motion for acquittal is made at the close of all evidence, we nevertheless review for plain error under Fed.R. Crim.P. 52(b). *See United States v. Parrott*, 434 F.2d 294, 295 (10th Cir.1970) (review for plain error despite waiver), *cert. denied*, 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330 (1971). When considering the

sufficiency of the evidence to support the verdict, we have stated the plain error standard in different words, *see Gretter v. United States*, 422 F.2d 315, 318 (10th Cir. 1970) (verdict that is palpably wrong); *Maxfield v. United States*, 360 F.2d 97, 102 (10th Cir.) (same), *cert. denied*, 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *Hughes v. United States*, 320 F.2d 459, 460 (10th Cir.1963) (miscarriage of justice), *cert. denied*, 374 U.S. 966, 84 S.Ct. 483, 11 L.Ed.2d 415 (1964); *Corbin*, 253 F.2d at 648 (manifest error necessary to prevent a miscarriage of justice), but the standard actually applied is essentially the same as if there had been a timely motion for acquittal. *See, e.g., Corbin*, 253 F.2d at 648–49 (applying normal substantial evidence standard, although ostensibly reviewing for only manifest error); *see also* 2 S. Childress & M. Davis, *Standards of Review* § 9.11, at 65 & § 9.12 (1986) ("[W]aiver of objection to the denial of the motion [for judgment of acquittal] does not alter the appellate standard of review, which remains an independent review of the legal question of sufficiency."); 2 C. Wright, *Federal Practice and Procedure* § 469, at 675 (2d ed. 1982). The test is this: on the basis of the whole record, "[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986); *cf. Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (same standard applicable to habeas cases).

The alleged conspiracy to distribute illegal drugs, primarily cocaine, centered around the activities of three brothers, Benito, Lee Juan, and Claude Bowie, Jr. The defendant is a first cousin of the Bowie brothers. The primary means of distribution was through various "dope houses," which acted as retail outlets. Customers could obtain drugs either by paying cash or exchanging property, usually stolen, for the drugs. The property then would be resold and the proceeds reinvested into the operation.

■ To obtain a conviction for conspiracy under 21 U.S.C. § 846, the government must establish by direct or circumstantial evidence that (1) a conspiracy existed, (2) the defendant knew at least the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy. *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988). The government need not show that the defendant knew all the details of the conspiracy or all the conspirators, and proof of an overt act in furtherance of the conspiracy is not a necessary element of a § 846 conspiracy. *Id.* In addition, the defendant's participation in, or connection to, the conspiracy "need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." *Id.* (quoting *United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)).

■ Here, the government proved the existence of the conspiracy beyond peradventure. Several admitted coconspirators testified about the above-described distribution operation and the structure of the organization. Defendant's knowledge of the conspiracy to distribute cocaine was established by reasonable inference from taped telephone conversations, testimony of alleged coconspirators, and testimony of the defendant himself. The government established defendant's participation in the conspiracy in at least three respects. First, there was evidence that defendant distributed cocaine obtained from Claude Bowie or his associates. *See, e.g.,* III R. 32–33, 35–37, 112–13, 131–33; IV R. 63–64, 74–75. Second, there was evidence that defendant dealt in stolen property in connection with the conspiracy, both as a wholesaler and as a procurer. *See, e.g.,* Addendum to Brief of Plaintiff–Appellee, apps. B–E [hereinafter Addendum] (transcript of 10–28–85, 10–30–85, and 11–1–85 telephone conversations); III R. 37–40, 133–37, 157–58; IV R. 90–92. Reasonable inferences from taped

telephone conversations involving defendant show that defendant discussed the payment for, and distribution of, cocaine with an admitted member of the conspiracy and discussed the acquisition and disposition of stolen property with Claude Bowie. Addendum, apps. A–E (transcript of 10–27–85, 10–28–85, 10–30–85, and 11–1–85 telephone conversations). Third, there was evidence that, in order to avoid suspicion, defendant took title to houses Claude Bowie purchased with proceeds from drug sales, because defendant also had legitimate employment but Claude did not. *See, e.g.,* II R. 19–23; III R. 20–22, 25–26; IV R. 120–22, 138. This evidence was more than sufficient to sustain the conviction on the conspiracy count.

Defendant also alleges that the government failed to produce evidence sufficient to convict him on the five facilitation counts, but does not direct our attention to any deficiency. We have carefully reviewed the record and find it sufficient to support the facilitation convictions.

### II

■ Defendant contends that the government improperly vouched for and bolstered the credibility of certain of its witnesses. The government's first witness, FBI agent John Lanata, testified to the terms of cooperation agreements between the government and several witnesses it used at trial. The defendant objects to those portions of agent Lanata's testimony that refer to the standard provision of all plea or cooperation agreements requiring the individual to provide truthful information. At trial, defense counsel posed no objections to this testimony; therefore, we can disturb defendant's conviction only if we find plain error. *See United States v. Young,* 470 U.S. 1, 14–20, 105 S.Ct. 1038, 1045–49, 84 L.Ed.2d 1 (1985); Fed.R. Crim.P. 52(b).

### A

■ It is error for the prosecution to personally vouch for the credibility of its witnesses. *United States v. Carleo,* 576 F.2d 846, 852 (10th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978); *United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974); *see Young,* 470 U.S. at 18, 105 S.Ct. at 1047. Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony. *United States v. Dennis,* 786 F.2d 1029, 1046 (11th Cir.), *modified on reh'g on other grounds,* 804 F.2d 1208 (1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987); *United States v. Roberts,* 618 F.2d 530, 536–37 (9th Cir.1980); *see Young,* 470 U.S. at 18–19, 105 S.Ct. at 1047–48; *United States v. Machi,* 811 F.2d 991, 1003 (7th Cir.1987).

■ Presenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. *See United States v. Dadanian,* 818 F.2d 1443, 1445 (9th Cir.1987), *rev'd on reh'g on other grounds,* 856 F.2d 1391 (1988); *United States v. Martin,* 815 F.2d 818, 821–23 (1st Cir.), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987); *United States v. Binker,* 795 F.2d 1218, 1223–28 (5th Cir. 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987); *Dennis,* 786 F.2d at 1045–47; *United States v. Kramer,* 711 F.2d 789, 795 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *United States v. Barnes,* 604 F.2d 121, 150–51 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Use of the "truthfulness" portions of these agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony. *See, e.g., United States v. Hilton,* 772 F.2d 783 (11th Cir.1985) (agreement to submit to polygraph test); *Binker,* 795 F.2d at 1222 n. 2 & 1227 (portion of plea agreement

stating that government had verified accuracy of witness' statement); *United States v. Brown*, 720 F.2d 1059, 1072–73 (9th Cir. 1983) (agreement to submit to polygraph test); *Roberts*, 618 F.2d at 532–34 (statement that detective was in courtroom monitoring truthfulness of witness' testimony). In the instant case, there was no improper vouching. Agent Lanata's testimony did no more than reveal that the witnesses had an obligation to testify truthfully and explain the consequences of a breach of that obligation.

## B

▮ Defendant also argues that testimony on the "truthfulness" portions of the witnesses' cooperation agreements during direct examination of agent Lanata impermissibly bolstered the witnesses' credibility at a time when their credibility was not yet at issue.[1] Fed.R.Evid. 608(a)(2) provides that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Courts do not agree on whether this rule applies to the "truthfulness" portions of cooperation agreements. *Compare United States v. Edwards*, 631 F.2d

1049, 1051–52 (2d Cir.1980) (admissible only after credibility attack) *with United States v. McNeill*, 728 F.2d 5, 14 (1st Cir.1984) (admissible even if credibility never attacked). We need not address this issue, however, because even if there was error, it was harmless. *See Young*, 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14 (harmless error cannot constitute plain error).

As many courts have noted, a cooperation agreement's bearing on a witness' credibility is a double-edged sword: although the agreement contains an obligation to tell the truth, the witness may be testifying solely to obtain the benefits of the cooperation agreement. Indeed, defense counsel repeatedly attempted to make this point during cross-examination of agent Lanata. Fed.R.Evid. 608(a)(2) seems primarily concerned with saving time and simplifying trials; unless there is a specific reason to believe otherwise, we can safely presume that witnesses tell the truth. *Hilton*, 772 F.2d at 786. On direct examination agent Lanata made only a single reference to the truthfulness requirement of the plea agreements.[2] Most of what might be regarded as credibility bolstering was elicited by defense counsel in cross-examination.[3] Thus, at worst agent

---

**1.** A number of courts appear to regard credibility-bolstering as no different from credibility-vouching, and merge the two concepts. *See, e.g., United States v. Townsend*, 796 F.2d 158, 162–63 (6th Cir.1986); *Hilton*, 772 F.2d at 786–87; *United States v. Oxman*, 740 F.2d 1298, 1302–03 (3d Cir.1984), *vacated on other grounds*, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *United States v. Beaty*, 722 F.2d 1090, 1096–97 (3d Cir.1983); *United States v. Henderson*, 717 F.2d 135, 137–38 (4th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984). We consider these to be different issues; therefore, we analyze them separately.

**2.** On direct examination of agent Lanata, the following exchange occurred:
"Q. Now, in interviewing these particular witnesses, did you have an occasion to make them any promises or offer them any consideration in return for their interviews with you?
A. No promises were made to them. The only understanding would be is that if they provided truthful information, then the court would be made aware."
II R. 13.

**3.** On cross examination, defense counsel elicited the following from agent Lanata:
"A. ... I ask them what they know about those people and their involvement. They tell me and they're instructed both by myself and by the Assistant U.S. Attorney ... we want the truth and nothing but the truth.
If they know nothing, they tell us that they know nothing. If they only know a little bit about an individual, they only tell us a little bit.
. . . .
Q. Okay. Why would it not be apropos if a witness is in jail and we have one of these ... clauses in the plea agreement ... where it is if we find out at any time that you're not cooperating with us, our plea agreement with you is null and void and we'll proceed to go to the grand jury. Now, why wouldn't this have an impact on a person?
A. Sir, I believe what that relates to is the fact that again we emphasize to these individuals that we expect them to be truthful.
We have had cases where individuals have not been truthful with us. In which case the plea agreement, has been deemed null and void and that person goes in front of the sentencing court without a confidential mem-

Lanata's statement on direct was merely premature in light of defense counsel's subsequent attack. We hold that the error, if there was any, does not warrant reversal. *Accord Barnes*, 604 F.2d at 151; *United States v. Arroyo–Angulo*, 580 F.2d 1137, 1146–47 (2d Cir.), *cert. denied*, 439 U.S. 913 & 1005, 99 S.Ct. 285 & 618, 58 L.Ed.2d 260 & 681 (1978) & 439 U.S. 1131, 99 S.Ct. 1052, 59 L.Ed.2d 93 (1979). *But see United States v. Borello*, 766 F.2d 46, 57–58 (2d Cir.1985) (refusing to continue to find premature bolstering harmless error in light of long line of cases condemning practice).

### III

■ Defendant next contends that cross-examination of two of the government's witnesses revealed that defense counsel may have been laboring under conflicts of interest that denied defendant his Sixth Amendment right to effective assistance of counsel. It is clear that the right to counsel guaranteed by the Sixth Amendment includes the "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). Because defendant lodged no Sixth Amendment objection at trial, we can disturb his conviction only if he demonstrates "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Alternatively, since the district court conducted no inquiry into possible conflicts, if we can discern from the record the possibility of an actual conflict with an adverse effect, we should remand to the district court for an

evidentiary hearing on the matter. *See Wood v. Georgia*, 450 U.S. at 272–73, 101 S.Ct. at 1103–04; *United States v. Winkle*, 722 F.2d 605, 611–12 (10th Cir.1983).

"Actual conflict" and "adverse effect" are not self-defining phrases, *see Cuyler v. Sullivan*, 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3 (Marshall, J., concurring in part and dissenting in part); *Burger v. Kemp*, 483 U.S. 776, 799 n. 6, 107 S.Ct. 3114, 3122 n. 6, 97 L.Ed.2d 638 (1987) (Blackmun, J., dissenting), but in the context of the instant case, we hold that defense counsel's performance was adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests. *Brien v. United States*, 695 F.2d 10, 15 (1st Cir.1982); *see Porter v. Wainwright*, 805 F.2d 930, 939–40 (11th Cir.1986), *cert. denied*, 482 U.S. 918 & 919, 107 S.Ct. 3195 & 3196, 96 L.Ed.2d 682 & 683 (1987). No further showing of prejudice is necessary. *Cuyler v. Sullivan*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19. With this standard in mind, we turn to defendant's allegations of conflict.

### A

■ On cross-examination, Raleigh Ervin, a government witness, testified to the effect that defense counsel had represented Benito Bowie in connection with an unrelated murder charge and that Ervin, who witnessed the incident, had falsified his signed statement to the police under defense counsel's supervision.[4] Defendant

---

orandum of cooperation to the sentencing court. That's if a person is not truthful.

. . . .

Q. Well, if it had an impact ... why can it not be a motive and incentive for these other people?

A. Sir, because they're instructed to tell the truth and if we find that they're not telling the truth, then there's some problem.

Q. Well, are you going to find that they're not telling the truth if they're saying exactly what you want them to say?

A. Sir, we instruct them ... on numerous occasions, our requirement with them is that they be truthful."

II R. 27–31.

4. That testimony was as follows:

"A. I was Claude's number two person. Okay. The way it ran it was Benito Bowie and Juannie that sold drugs, okay, and Claude Bowie. I was really number two until Douggie got killed and when Douggie got killed, I became number one in Claude's department.

. . . .

Q. And you didn't have anything to do with Benito Bowie?

A. No I didn't until I helped him on the murder case when we went to your office to change—

contends that defense counsel could have pursued the impeachment value of Ervin's admitted dishonesty, but did not do so because it implicated defense counsel in wrongdoing. We might agree with this proposition if the prior incident were more directly related to the instant case. The only possible trial use of the prior incident, however, was as evidence of a specific instance of the conduct of the witness for the purpose of attacking the witness' credibility. Such instances may never be proved by extrinsic evidence, and they can be inquired into on cross-examination only in the discretion of the trial court. Fed.R.Evid. 608(b); *see generally McCormick on Evidence* § 42 (E. Cleary 3d ed. 1984).

Inquiry into specific instances of a witness' veracity can bog down a trial in distracting and confusing side issues. *See id.* § 42, at 90–91. Even in cases in which defense counsel actually represented the government witness in the prior case, the conflict-of-interest claim can only succeed if there is a substantial and particular relationship between the two cases. *See Smith v. White,* 815 F.2d 1401, 1405–06 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). A collateral incident relevant only to witness credibility does not satisfy this prerequisite.

Q. I didn't understand that?
A. To change his statement.
Q. To change—what are you talking about?
A. I'm talking about when I came to your office. You remember when we came to your office, sir. When I came in your office when Benito had that murder charge? Do you remember that?
Q. You never came to my office?
A. Yes, I did, on Northeast 23rd when you had that house.
Q. What did you do at the office?
A. Gave a statement to change what happened to the murder and I signed the paper in your office, sir.
Q. Let's take it from the top. What murder are you talking about and what paper did you sign?
A. It was on Douggie.
Q. And whose story did you change?
A. I told my part about it, to tell that Benito Bowie didn't have no gun. Okay.
Q. Now whose story did you change? I don't understand. Whose story are you changing?
 . . . .
A. Everybody had gave a statement to the detectives, but then nobody signed nothing,

The witness' admission of prior untruthfulness was before the jury and, no doubt, had an impact on their credibility assessments. But in any event, the district court would have been well within its discretion to forbid any inquiry into this incident. Therefore, we cannot say that defense counsel's performance was adversely affected by any conflict of interest inherent in this situation. We perceive no other respect in which defense counsel's interests could diverge from the interests of his client, and defendant suggests none.

**B**

During cross-examination of Roger Britt, a witness for the government, it became apparent at several points that defense counsel may have previously represented Britt in connection with his plea bargain with the government by which Britt became a witness in the instant case. IV R. 123–26, 135–36. When defense counsel has previously represented a government witness in a related case, the primary conflict-of-interest concern is that defense counsel may not be able to effectively cross-examine the witness for fear of divulging privileged information. *See Smith v. White,* 815 F.2d at 1405–06; *Winkle,* 722 F.2d at

okay. Didn't nobody sign no paper. So, everybody made it up to your office and signed what had happened and changed, you know, everybody did and told what had happened.
Q. Who told you to say that lie?
A. Benito Bowie.
Q. No. Who told you to say that—
 . . . .
Q. Who told you to say that story was changed from where?
A. It was changed from what really happened to the house, when the killing happened, sir. When everybody was on that murder case, you know. I'm just telling you the honest truth, sir, and you know it, because we walked off that. . . .
 . . . .
Q. Were you involved in the case?
 . . . .
A. No, but I was at the party. So, I could tell my part. But I never did deal with it. No, I did not. But you did have a statement for me. That, you did. . . ."
III R. 44–46.

610–11; *Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir.1980). Of course, if the witness waives his attorney-client privilege, then any potential conflict is removed. *See United States v. Partin*, 601 F.2d 1000, 1009 (9th Cir.1979), *cert. denied*, 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *United States ex rel. Kachinski v. Cavell*, 453 F.2d 581, 583 n. 6 (3d Cir.1971). In addition, defendants may waive their attorneys' conflicts of interest. *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978).

While there is no per se rule prohibiting representation of the defendant by counsel who has previously represented a government witness in a related case, *see, e.g., Hernandez v. Mondragon*, 824 F.2d 825, 827 (10th Cir.1987); *United States v. Davis*, 766 F.2d 1452, 1457 (10th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985), the potential for conflict is great where there is a substantial relationship between the cases, *see, e.g., Porter*, 805 F.2d at 939–40; *Winkle*, 722 F.2d at 609–12; *Ross*, 638 F.2d at 983–85. This case presents a potential for the same sorts of conflicts condemned in the *Porter, Winkle*, and *Ross* cases.

 Although defense counsel's cross-examination of witness Britt was vigorous, and we see no obvious indication that defense counsel's prior representation of the witness adversely affected counsel's performance, Britt was an important witness whose testimony tied defendant to the conspiracy in several respects. We cannot discern from the record the precise scope of the prior representation, whether the *witness* waived any attorney-client privilege that might have restricted defense counsel's cross-examination. Nor can we determine whether *defendant* had knowledge of his counsel's prior representation of the government witness and waived his right to counsel free of such conflicts, which is more likely in a case such as this one when defendant has hired counsel. Consequently, under the circumstances, we are hesitant to dispose of the conflict claim without an evidentiary hearing on the matter by the district court. Therefore, we will remand this case so the district court can determine whether an actual conflict adversely affected defense counsel's performance—that is, a conflict existed that might have foreclosed a specific and seemingly valid or genuine strategy or tactic in the handling of this witness.

If the district court determines that an actual conflict adversely affected counsel's performance and there was no valid waiver, the court should order a new trial. Otherwise, it should reinstate the judgment of conviction. *See Winkle*, 722 F.2d at 611–12. The defendant's conviction is, therefore, VACATED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.