25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATE of America, Plaintiff-Appellee,
v.
Dennis Bates FLETCHER, Defendant-Appellant.
 No. 93-6155.
 United States Court of Appeals,
Tenth Circuit.
 June 7, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON, and KELLY, Circuit Judges.
 
 
 1
 Dennis Bates Fletcher appeals his conviction and sentence following a guilty plea to three counts of distributing and possessing with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. 841(a)(1). He contends that his Sixth Amendment right to counsel was violated during his plea negotiations and sentencing proceedings because his counsel had previously represented a key government witness and, therefore, had an impermissible conflict of interest. He also claims that the district court failed adequately to respond to his objections to the presentence report in violation of Fed.R.Crim.P. 32(c)(3)(D).
 
 
 2
 For the reasons expressed below, we hold that Fletcher has not shown an actual conflict of interest that adversely affected his representation, as required to prove a Sixth Amendment violation unchallenged in the trial court. See Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). We therefore affirm his conviction and sentence of 240 months in prison on each count, concurrently. We agree with Fletcher, however, and the government so concedes, that the district court failed to respond as required by Rule 32(c)(3)(D) to his objections to certain financial data in his presentence report. Accordingly, we remand for appropriate findings or determinations to be made with respect to these objections, since they may affect Fletcher's ability to pay the $75,000 fine imposed on him.
 
 
 3
 On November 3, 1992, Fletcher sold a small amount of methamphetamine to an undercover officer and was arrested. On January 4, 1993, he pleaded guilty to distributing one-half gram of methamphetamine, and to possessing with intent to distribute one ounce of methamphetamine and one-half ounce of cocaine. Fletcher's sentence under the United States Sentencing Guidelines, if based on the relatively small amounts of drugs involved at the time of his arrest, would have been approximately 46-57 months (base offense level 22, criminal history II). In his presentence report, however, the government alleged that Fletcher ran a much larger drug business, and that through this "relevant conduct" from 1989 to his arrest he had controlled approximately 1.3 kilograms of cocaine, 2.1 kilograms of methamphetamine, and 117.7 kilograms of marijuana.
 
 
 4
 The extent of Fletcher's relevant conduct was hotly disputed at his sentencing hearing. Several witnesses for the government testified that they (or in the case of Officer Phil Long, persons he had interviewed) had regularly purchased certain quantities of drugs from Fletcher over periods of weeks or months. Fletcher countered with evidence that some of the informants interviewed by Officer Long had recanted their stories, and that other witnesses had various reasons to be biased against Fletcher. The district court ultimately found that the government had proven Fletcher's connection to the larger drug quantities by a preponderance of the evidence, and sentenced Fletcher to concurrent terms of the statutory maximum of 240 months (which was within the applicable guideline range for base offense level 36, criminal history category II).
 
 
 5
 One of the government's key witnesses was Julie (or Julia) Alexander. Although her testimony provided the direct basis for less than ten percent of the total drug quantity attributed to Fletcher, she corroborated the hearsay testimony of Officer Long about other individuals who were regular Fletcher customers. The district court specifically found Alexander to be credible and called her testimony "very important" because it corroborated the accounts of other persons introduced through Officer Long. R. Supp. Vol. I at 250.
 
 
 6
 Fletcher's Sixth Amendment conflict-of-interest claim arises from the fact that his retained counsel, Chris Eulberg, had previously represented Alexander in one criminal (drug trafficking) and one civil (auto accident) matter. Of particular significance, neither case appears to have involved Fletcher or been related to the present case in any way.[2]
 
 
 7
 A defendant has a Sixth Amendment right to representation free from conflicts of interest. Wood v. Georgia, 450 U.S. 261, 271 (1981). We have recognized that a potential conflict of interest exists when defense counsel has previously represented a government witness, because defense counsel may not conduct a complete cross-examination of the witness for fear of revealing privileged information. United States v. Bowie, 892 F.2d 1494, 1501 (10th Cir.1990). Of course, if the prior representation of the witness had nothing to do with the present case, then there is little reason to suspect that defense counsel will be burdened by privileged information. See id. Thus, we have said in this context that "the conflict-of-interest claim can only succeed if there is a substantial and particular relationship between the two cases." Id.
 
 
 8
 As noted above, Alexander's previous case (in which Eulberg represented her) and the present case are unrelated. Both involve drugs, and Alexander, but there is no evidence in the record--and no suggestion by Fletcher--that he, or anyone else involved in this case, would also have been involved in Alexander's case.
 
 
 9
 Still, Fletcher points to an exchange during Eulberg's cross-examination of Alexander and contends that it demonstrates the existence of an actual conflict and adverse affect:
 
 
 10
 Q: Miss Alexander you and I know each other, is that true?
 
 
 11
 A: Yes.
 
 
 12
 ...
 
 
 13
 Q: And you have been in my office several times ...; is that correct?
 
 
 14
 A: Right.
 
 
 15
 Q: And I've asked you on numerous occasions if you were still straight, haven't I?
 
 
 16
 A: Yes.
 
 
 17
 Q: And what was your answer to me?
 
 
 18
 A: That I was.
 
 
 19
 Q: Was that true?
 
 
 20
 A: At times it was.
 
 
 21
 Q: And times it wasn't?
 
 
 22
 A: Right.
 
 
 23
 Q: You're saying now that you were using drugs all during this time?
 
 A: Most of the time
 
 24
 THE COURT: Come forward, counsel, please.
 
 
 25
 R. Supp. Vol. I at 64-65. At the bench, the judge told Eulberg that he felt "uneasy" about Eulberg revealing conversations that took place in his office, and suggested that "it would be best not to" do so. Id. at 65-66. Eulberg stated his belief that the conversations at issue were not related to his representation of her at that time and therefore were not protected by privilege, but agreed to not "go any further into that." Id. at 66. Eulberg continued his cross-examination of Alexander, bringing out among other things that Alexander had lied to her probation officer about her drug use, and that she was upset at Fletcher because she had bought a car from him that broke down a short time later. Id. at 67.
 
 
 26
 Fletcher contends that the above exchange shows Eulberg had to avoid "areas of questioning" that "bore directly on Alexander's credibility in the crucial part of the case--determining relevant conduct drug quantity." Defendant/Appellant's Opening Brief at 20. In our view, however, the only area of questioning at issue in the above exchange was whether Alexander had previously lied to Eulberg about her drug use. Evidence of such a lie would be directly relevant to Alexander's credibility, but only indirectly relevant at best (assuming that Alexander's statement to Eulberg that she was "straight" coincided with her drug dealings with Fletcher) to the drug quantity attributable to Fletcher's relevant conduct.
 
 
 27
 Defense counsel's failure or reluctance to cross-examine about "[a] collateral incident relevant only to witness credibility" is insufficient to support a claim that a conflict of interest adversely affected counsel's performance. Bowie, 892 F.2d at 1501. This is no less true when the witness's credibility is very important. Eulberg challenged Alexander's credibility aggressively and thoroughly, despite having represented her on previous, unrelated occasions. Thus, we hold that Fletcher has failed to demonstrate that the alleged conflict violated his Sixth Amendment right to counsel, and we need not consider whether he effectively waived that right.
 
 
 28
 Fletcher further contends that the conflict of interest may have adversely affected Eulberg's performance during plea negotiations, and that the present record is insufficient to address this question. He requests a remand for an evidentiary hearing on this issue. We deny this request, which relies on mere speculation. Fletcher fails to offer any theory about how plea negotiations might have been affected by Eulberg's prior representation of Alexander, and no such theory is so obvious as to warrant a hearing.
 
 
 29
 Finally, Fletcher contends--and the government concedes--that the district court failed to comply with Rule 32(c)(3)(D) in responding to his factual objections to the financial information in his presentence report. We agree.
 
 
 30
 Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure provides that if the factual accuracy of a presentence report is challenged by a defendant or his counsel, the district court must either make a finding as to the allegation or make a determination that no such finding is necessary as the controverted matter will not be taken into account by the sentencing court.
 
 
 31
 United States v. Roederer, 11 F.3d 973, 980 (10th Cir.1993) (quoting United States v. Jimenez, 928 F.2d 356, 365 (10th Cir.), cert. denied, 112 S.Ct. 164 (1991)). The rule also requires the district court to append a written record of such findings or determinations to the presentence report. Id. at 981.
 
 
 32
 At sentencing, Fletcher objected to certain properties listed in the presentence report as "unencumbered assets," claiming either that such properties were encumbered or did not belong to him. R. Supp. Vol. I at 255-57. The district court responded:
 
 
 33
 Notwithstanding the presentation today concerning the defendant's financial status, he still has a significant net worth. It is not liquid but still it is significant enough so that a fine well within the guideline system is called for. The Court imposes a fine of ... $75,000.
 
 
 34
 R. Supp. Vol. I at 258. The district court made no specific findings, either orally or in its statement of findings appended to the presentence report, about the properties named in Fletcher's objection, and it did not clearly determine pursuant to Rule 32(c)(3)(D) that no such findings were necessary in that the challenged information would not be considered in setting Fletcher's fine.
 
 
 35
 In the district court's defense, Fletcher's fact-intensive objection regarding his net worth came near the end of a long, fact-intensive hearing, and Fletcher provided the court with little notice of the substance of this claim in his written objections submitted in advance of the hearing. Furthermore, Fletcher admittedly supplied the probation office with the very information about which he complained. Nonetheless, the objection alleged serious errors in the presentence report that could affect whether, and to what extent, Fletcher is capable of paying the $75,000 fine imposed against him. Thus, more specific findings, or a determination under Rule 32(c)(3)(D) that no such findings were necessary, should have been made.
 
 
 36
 For the reasons expressed above, Fletcher's case is REMANDED to the district court for findings pursuant to Fed.R.Crim.P. 32(c)(3)(D) on the objection in question and for reconsideration of the appropriate fine, if any, to impose against him. His case is otherwise AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 According to Alexander, her drug trafficking case began with her arrest in 1989 and concluded with her sentencing in 1991. R. Supp. Vol. I at 62. This is consistent with Eulberg's statement to the court at a hearing on the potential conflict that her drug trafficking case had been "two or three years ago." R. Supp. Vol. II at 6. Alexander testified that when she was arrested she had not gotten her drugs from Fletcher, R. Supp. Vol. I at 67, and testified that she did not start dealing in drugs with Fletcher until April of 1991. Id. at 52. Fletcher agreed with Alexander's estimate of when they began dealing in drugs together. Id. at 182-85. Thus, the record strongly suggests that Alexander's drug trafficking case had no connection whatsoever to Fletcher