**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 28 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RUBEN LUNA,

    Defendant-Appellant.

No. 00-2022
(D.C. No. CR-98-632-MV)
(D. of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **HOLLOWAY** and **MURPHY**, Circuit Judges.

Defendant/appellant Ruben Luna was indicted on September 2, 1998 on three counts: conspiracy to possess more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 & 841(b)(1)(B) and 18 U.S.C. § 2; possession of more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B) and 18 U.S.C. § 2; and carrying a firearm in connection with a drug offense in violation of 18 U.S.C. § 924(c)(1). Two other men, Arturo Gandarilla and Roberto Gomez, were named in the two drug counts of the indictment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After both of the co-defendants had entered guilty pleas, the case was tried on June 2 and 3, 1999, against Luna only. A jury returned guilty verdicts on all three counts. Luna was sentenced to 138 months – 78 months of concurrent terms on the drug counts and a consecutive sentence of 60 months on the gun count, *inter alia*. Luna now appeals his convictions, claiming insufficiency of the evidence to support his convictions, improper argument by government counsel, violation of the Double Jeopardy Clause, error in denying a new trial motion, and cumulative error.

**I**

**A**

The following summary of the underlying facts from the trial transcript is taken in the light most favorable to the verdict:

Undercover agents investigating drug trafficking in Albuquerque were introduced by confidential informants to Gandarilla and then to Gomez. The undercover agents were posing as drug dealers from Colorado who wanted to increase their profits by acquiring drugs in Albuquerque, where the prices might be lower than in Colorado. Officer Mendez, the lead agent, met Gandarilla on August 6, 1998, hoping to buy a substantial quantity of marijuana from him, but Gandarilla said he no longer had any marijuana. Gandarilla said, however, that he might be able to provide one or two kilograms of cocaine within a few days, as soon as his supplier returned from Mexico.

On August 12, 1998, Officer Mendez spoke by telephone with Gandarilla, who said

that he could supply a quantity of cocaine that day. Mendez and Gandarilla arranged to meet at a bar that evening. Two confidential informants were also present, as well as another undercover officer, Mora. While the agents were talking with Gandarilla, Gomez arrived. Gandarilla indicated that Gomez would be the supplier. Eventually the group went outside the bar, where Gomez provided a sample of cocaine for the officers and told them the price would be $42,000 for two kilos. The officers showed Gandarilla and Gomez the money, but Gomez then decided that he wanted to complete the transaction elsewhere because he was becoming concerned about the number of people in the area outside the bar. He told the officers to follow his truck to the new location.

With Officers Mendez and Mora in one truck and Gomez and Gandarilla in another, the officers were led to a nearby parking lot where a mobile food stand called El Bronco was operating. Gomez, Gandarilla and Mendez then went to the food stand and placed orders. Within a short time, a pickup truck drove by, then pulled in and parked behind the truck that Gandarilla and Gomez had driven. Either Gandarilla or Gomez, speaking in Spanish and referring to the driver of the pickup as "El Bueno," told Mendez that this was the supplier they were waiting for and said, "Ya se iso." Mendez testified that "ya se iso" meant "this is done," and indicated to him that "it's going to happen." IV R. at 98.

The driver of the pickup, later identified as Luna, got out of his truck carrying a white box. Luna handed the box to Gomez, saying something that Mendez couldn't hear, and proceeded to the food stand, where he appeared to be making an order. Gomez put the white

box on the floorboard of his truck and closed the door. Mendez was standing only a few feet away at the time. Gomez then turned to Mendez and said something like, "Let's get this done, let's do this." Gomez then opened the truck door and opened the box, revealing two packages. At Mendez's request, one of the packages was pierced to show that the contents were cocaine. Mendez then went back to the pickup that he and Mora were using, ostensibly to get the money. While walking to the pickup, Mendez removed his hat, a prearranged signal for the supporting officers to move in and make the arrests. On arriving at the pickup, Mendez used a portable radio transmitter to give another signal. Officers then moved in and arrested Gandarilla, Gomez, and Luna. Luna was carrying a loaded pistol in the front waistband of his pants, a 9-millimeter pistol. IV R. at 102.

**B**

In May 1999, Gandarilla and Luna went to trial on the charges in the indictment, Gomez having pleaded guilty. In that trial, Gandarilla testified in his own defense. During cross-examination, the prosecuting attorney mentioned the fact that Gandarilla had been in custody since his arrest. Gandarilla moved for a mistrial and Luna joined the motion. The district court granted the motion.

Gandarilla entered a guilty plea before the second trial. Luna was convicted on all three charges at the second trial. After Luna's convictions, his attorney was granted leave to withdraw from the case and new counsel was appointed.

Luna's new counsel, who also represents Luna on appeal, filed a motion for a new trial out of time. The motion sought relief from the seven day time limit of Fed. R. Crim. P. 33 on the basis that the motion relied on newly discovered evidence of ineffective assistance of trial counsel. The district judge held that under Rule 33 she had no jurisdiction to consider the untimely motion. Accordingly, she denied the motion and proceeded with sentencing. Luna now brings this appeal, raising the claims of error noted earlier.

## II

Luna contends that the evidence was insufficient to convict him. Luna did not move for a judgment of acquittal at the close of all the evidence. Nevertheless, our standard of review "is essentially the same as if there had been a timely motion for acquittal." *United States v. Bowie*, 892 F.2d 1494, 1496-97 (10th Cir. 1990).[1]

> The test is this: on the basis of the whole record, "[t]he evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."

*Id.* (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986)).

Luna does not specifically address his argument to the elements of the offenses of conviction, but it is apparent that he contests the elements of intent and knowledge on the drug counts by his contention that he was an innocent bystander. Of course, if his convictions on the drug counts were reversed, his conviction on the weapons count would

---

[1]*See also United States v. Cox*, 929 F.2d 1511, 1514 (10th Cir. 1991); *United States v. Leopard*, 936 F.2d 1138, 1140 n.2 (10th Cir. 1991).

also have to be reversed, as the crime charged in that count was carrying a firearm during and in relation to a drug trafficking crime.

The defense at trial was that Luna was not a participant in the transaction and knew nothing about it. Luna emphasizes the fact that he was not involved in any of the negotiations leading up to the transaction. Gandarilla testified that the cocaine was in the truck as he and Gomez drove from the bar to El Bronco. Gomez testified that he obtained the cocaine earlier in the evening. He also testified that he did not know that Luna would be at El Bronco.

Gomez said that he was very apprehensive about conducting this transaction, which he said was his first drug sale. He thought of a plan which he believed would give him some "cover." If, as seemed likely to him, he encountered some acquaintance at El Bronco, he would speak with him, then tell his buyer, Mendez, that this person had brought the cocaine. According to Gomez, it was mere coincidence that he happened to see Luna that night at El Bronco. It was also mere coincidence that Luna had with him that night some compact discs that he had borrowed from Gomez. On seeing Gomez at El Bronco, Luna gave him the discs in a box, the same white box in which the cocaine would later be found. Gomez testified that when he put the box in the floorboard of the truck, he removed the discs and put the packages of cocaine, which had been behind the driver's seat, into the box.

Notwithstanding the presentation of an innocent explanation for Luna's conduct and close proximity to the drug transaction, the simple answer to his challenge on appeal is that

the jurors were not obligated to accept any of this testimony. Applying the proper standard of review,[2] we conclude that the evidence was sufficient on each of the counts. Clearly, a rational jury could infer that Luna delivered the cocaine at El Bronco and knew what was in the box he gave to Gomez. The inference of guilt on Counts 1 and 2 is supported by such facts and circumstances as these: that Gandarilla and Gomez initially pointed out Luna as "El Bueno," the supplier; Luna's delivery of the box to Gomez; and the circumstances – such as Mendez's close proximity to Gomez and the brief interval of time between Gomez's receipt of the box and his displaying the packages of cocaine to Mendez – which would have made it extremely difficult for Gomez to have emptied the box and replaced the contents with the cocaine.

Although further discussion seems unnecessary, we will mention one more point. Not only did the evidence indicate that it would have been difficult for Gomez to have switched the original contents of the box for the cocaine, there was evidence that it would not even have been possible for him to have done that without detection by Officer Mendez. On cross-examination of Mendez, Luna's counsel tried to establish that there was some distance between Mendez and Gomez as Gomez was first placing the box in his truck's floorboard and some brief interval of time in which Gomez could have emptied the box and replaced the original contents with the two packages of cocaine. Mendez, however, testified that it would

---

[2]Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in the light most favorable to the government. *United States v. Wilson,* 107 F. 3d 774, 778 (10th Cir. 1997).

not have been possible for Gomez to do so because Gomez immediately closed the truck's door on placing the box inside, then "immediately reopened the door and the box was in the same place that it was." IV R. 137. Immediately after that, Gomez displayed the packages of cocaine for Mendez.

The foregoing discussion demonstrates the sufficiency of the evidence to support the convictions on Count 1 for conspiring to distribute cocaine, 21 U.S.C. § 846, and on Count 2 for possessing cocaine with intent to distribute it, 21 U.S.C. § 841 (a)(1). As to Count 3, we are likewise convinced the evidence was sufficient that Luna knowingly carried the firearm "during and in relation to" a drug trafficking crime. 18 U.S.C. § 924 (c)(1). When Luna was arrested at the scene of the transaction, D.E.A. Agent Mans found a 9-millimeter, fully loaded pistol in Luna's front waist band. IV R. at 102. These circumstances amounted to some evidence that the firearm had "some purpose or effect with respect to the drug trafficking crime ...." *Smith v. United States,* 508 U.S. 223, 238 (1993).

Defendant Luna's arguments are without merit. We hold that the evidence was sufficient to support the convictions.

### III

Defendant contends that the prosecutor improperly vouched for the law enforcement officers who testified at trial, improperly implying that the prosecutor had reason to know the officers were being truthful. During closing argument, the attorney for the government made these remarks:

I suggest to you that they ought to make you proud of their efforts to enforce the law because everything they did respected the rights of those involved, including Luna, Gandarilla and Gomez. And everything that was done was subject to ratification and affirmation by people like you. If they said something happened, they corroborated it. So you don't have the, you know, sworn word of someone who [sic] you suspect. Rather you have other people whose job it is to enforce the law in surveillance capacities.

VII R. 313-14.

This, defendant contends, was "grossly improper vouching" for the government's witnesses, which was made worse by contrasting the officers with those "who [sic] you suspect." This suggested that Gomez and Gandarilla were lying just because they were involved in a crime, while at the same time it suggested that the officers who testified were not lying just because they were officers.

Defendant also complains that the prosecutor made a second improper comment on rebuttal when he said: "And I suggest to you, when in your deliberations you're asked to determine whether [the testimony of Gandarilla] was truthful or whether it was not truthful, I suggest in material part it was not." VII R. 326. This was an improper expression of personal opinion by the prosecutor, defendant asserts, citing *United States v. Young*, 470 U.S. 1 (1985). *See* Brief in Chief for Appellant Ruben Luna at 14.

The government says that the remarks of which defendant complains merely suggested to the jurors reasons to credit the government's witnesses and not those of defendant by noting that the government had corroborated the testimony of its witnesses. This second comment is said not to be a statement of personal belief in the credibility of the officers but

was expressly prefaced as a suggestion, which the prosecutor was permitted to make.

Acknowledging that no objection to these arguments was made below and that our review consequently is only for plain error, *see United States v. May*, 52 F.3d 885 (10th Cir. 1995), Luna argues that the prosecutor's comments were of such a nature as to call into question the integrity and fairness of the process, mandating reversal of his convictions. We disagree. Looking at this second comment challenged, we agree with the government's position that this remark, being expressly proffered to the jury as a suggestion, was not improper vouching but was instead proper advocacy. And even if error, the argument did not constitute plain error warranting our overlooking the failure of defense counsel to preserve the point by timely objection. *United States v. Young*, 470 U.S. at 20.

The first comment also did not constitute improper vouching in our view. Instead of giving his personal opinion that the officers had testified truthfully, the prosecutor argued that their testimony was credible because it was corroborated. The reference to the defense witnesses, Gandarilla and Gomez, as persons "you suspect," seems nothing more than a reference to the well settled principle, embodied in Fed. R. Evid. 609(a)(1), that evidence of conviction of a felony may be considered by the jury in determining a witness's credibility.

Even if were we to assume that this first comment was objectionable, it does not meet the plain error standard. "Plain errors are those errors that when viewed against the entire record 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Bowser*, 941 F.2d 1019, 1021 (10th Cir. 1991) (quoting *United States v.*

*Young*, 470 U.S. at 15).  As we view the challenged comments in the context of the entire record, they seem to us not of much significance.  In any event, we do not think that the statements resulted in a fundamentally unfair trial, and we will not set aside the jury verdicts.

**IV**

Luna contends that the charges against him should have been dismissed as a result of the mistrial in the first case and that it was a violation of the Fifth Amendment's Double Jeopardy Clause to subject him to a second trial.     This issue hinges on the trial judge's finding of fact that the prosecution did not intentionally cause the mistrial, and so review is for clear error only.  *United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998) (noting previous cases in the circuit had applied different standards, but adopting the clear error standard for cases involving alleged "goading" of mistrial by prosecutor, based on *Oregon v. Kennedy*, 456 U.S. 667, 675 (1982)).  We also note that this issue was not raised in the district court, so our review is only for plain error.  Even if we were to apply only the clearly erroneous standard, however, Luna's argument is unconvincing.

In fact, Luna really does not make any reasoned analysis on the issue, but merely asserts without elaboration that the mistrial was the result of the prosecution's improper insertion into the trial of the fact of Gandarilla's detention.  Luna says that although the trial judge found that the government did not make an intentional mistake in order to provoke the mistrial, "that finding does not change the nature of the government's action and its impact on Mr. Luna's right to protection against double jeopardy."  Brief In Chief For Appellant

Ruben Luna at 16. Thus, Luna provides no basis at all for questioning the district court's finding that the mistake was not intentional. Counsel's *ipse dixit* is no substitute for legal argument supported by references to the record.[3]

There is no ban against a retrial "absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Oregon v. Kennedy*, 456 U.S. at 675-76. Having been given no reason to reject the district court's finding of fact that the prosecution did not intentionally goad the defense into moving for a mistrial, we hold that Luna has failed to establish a violation of the protection against double jeopardy.

## V

Luna alleges error in the district court's denial of his untimely motion for new trial, which he attempted to use as a vehicle for raising a claim of ineffective assistance of counsel. We have a strong policy against deciding ineffective assistance of counsel claims on direct review. *United States v. Galloway*, 56 F.3d 1239 (10th Cir. 1995) (en banc). We have also held that a claim of ineffective assistance is not considered to be based on newly discovered evidence where the facts alleged in the motion were within defendant's knowledge at the time of trial. *United States v. Jackson*, 88 F.3d 845, 847 (10th Cir. 1996).

Counsel fails to acknowledge these two controlling rules and offers no reason not to apply them to this case. Therefore, we hold that the district court did not err in denying the motion for new trial. We do not reach the merits of Mr. Luna's claim of ineffective

---

[3]In the brief, counsel refers to the transcript of the first trial, but that transcript is not in the record before us.

assistance of counsel which may be raised by postconviction proceedings.

## VI

Luna also makes a claim of cumulative error as a basis for reversal. We have concluded, however, that there was no error committed in any of the matters raised. The cumulative error argument is thus without foundation.

Accordingly, the convictions of defendant Luna are **AFFIRMED.**

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge