**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Austin L. JAMIESON, D.O.,**
**Defendant-Appellant.**

**No. 85–2016.**

United States Court of Appeals,
Tenth Circuit.

Nov. 26, 1986.

See also, D.C., 605 F.Supp. 119.

---

Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., for plaintiff-appellee.

Kiehl Rathbun, Wichita, Kan., for defendant-appellant.

Before MOORE, ANDERSON, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

By superceding indictment, Austin L. Jamieson, D.O., was charged in 53 counts with distributing controlled substances in violation of 21 U.S.C. § 841(a)(1). At the conclusion of its case-in-chief, the government moved to dismiss counts 25 through 53, and, without objection from defense counsel and with approval of the district court, those counts were dismissed. The defendant then called three witnesses and testified himself. After rebuttal testimony, the case was submitted to the jury, which, by its verdicts, acquitted defendant on counts 1 and 2, but convicted him on counts 3 through 24. Defendant was sentenced to imprisonment for five years on counts 3 through 15 and counts 19, 22, and 24, imprisonment for three years on counts 16 and 23, and imprisonment for five years on counts 17, 18, 20, and 21, all sentences to be served concurrently, plus a special parole term of five years. Defendant now appeals his conviction.

On appeal, defendant raises two issues: (1) the legal sufficiency of the evidence, and (2) the use in cross-examination, rebuttal, and closing argument of defendant's medical records. Our study of the matter leads us to conclude that the record amply supports the jury's verdict, and that use of defendant's medical records does not require reversal. We therefore affirm.

■ The central issue in this case is whether the defendant issued drug prescriptions to Kathryn Christopher and Robin Clark which were *not* for a legitimate medical purpose and were *not* in the usual course of professional practice. On this essential element of the crime charged, the government has the burden of proof. *United States v. Bartee*, 479 F.2d 484 (10th Cir.1973). In connection therewith, the government called as two of its witnesses Kathryn Christopher and Robin Clark. Ms. Christopher testified that from January, 1981, through July, 1982, the defendant

issued her drug prescriptions on numerous occasions in exchange for sex.[1] She stated that though there were times when the defendant treated her as a "legitimate patient," on numerous other occasions she "just ask[ed] [Dr. Jamieson] straight out for drugs and [got] them." Ms. Christopher also testified that on occasion the prescriptions were written in names other than her own, and that she received prescriptions with "excessive frequency," i.e., the drugs issued pursuant to prescription were being taken more frequently than directed.

Robin Clark, an undercover agent for the Kansas Bureau of Investigation, testified that beginning in February, 1981, she, using a fictitious name, received some 14 different prescriptions for controlled substances from the defendant to ostensibly help her lose weight. Ms. Clark weighed only 122 pounds, and the defendant continued to prescribe them even though Ms. Clark showed no ensuing loss of weight and even after Ms. Clark told the defendant that in reality she took the drugs because they gave her "pep" and that she ingested them more frequently than directed. On one occasion, the defendant refused to prescribe Ms. Clark a different drug because "the federal government would come down on him because of that."

■ At the conclusion of the government's case-in-chief, at the conclusion of the entire case, and in his motion for a new trial, defendant argued that the evidence was legally insufficient to show that he issued any prescription which was not for a legitimate medical purpose and not in the usual course of his professional practice. We disagree. In our view, the testimony of Ms. Christopher and Ms. Clark, capsulized above, is itself sufficient to withstand the motion for judgment of acquittal made at the conclusion of the government's case-in-chief.[2] It is true that the government presented no expert medical testimony in its case-in-chief, though it did call such a witness in rebuttal. Expert medical testimony is, of course, admissible when it bears on the question of whether a doctor in prescribing a controlled substance is acting for a legitimate medical purpose. *United States v. Bartee,* 479 F.2d 484 (10th Cir.1973). However, expert medical testimony is not always essential, and the very facts and circumstances surrounding the issuance of a drug prescription can support a finding that the prescription was *not* issued for a legitimate medical purpose. For example, Ms. Christopher's testimony that she, on occasion, just "straight out" asked for a drug prescription, and got one, in exchange for oral sex tends to show, and strongly so, the absence of a legitimate medical purpose. *See United States v. Potter,* 616 F.2d 384 (9th Cir.1979). In sum, the evidence is legally sufficient to support defendant's conviction.

Defendant's second ground for reversal concerns the government's use at trial of certain of his medical records. During the investigative phase of this case, numerous medical records were taken by government agents who, pursuant to a warrant, conducted a search of defendant's offices. Prior to trial, the defendant moved to suppress the use at trial of the records thus seized. The district court, after hearing, granted the motion and ordered the records returned to the defendant, the district court being of the view that the affidavits offered in support of the request for a warrant were defective.

1. Ms. Christopher, then a drug addict, was introduced to defendant by a mutual acquaintance in January, 1981. In January, 1982, Ms. Christopher contacted the Drug Enforcement Administration and volunteered to assist in an investigation of the defendant.

2. Where a motion for judgment of acquittal made at the conclusion of the government's case is denied, and a defendant thereafter presents evidence, the sufficiency of the evidence is to be determined by the entire record. *United States v. Guerrero,* 517 F.2d 528 (10th Cir.1975). This distinction, however, has no particular significance here, because, in our view, at the conclusion of the government's case-in-chief there was sufficient evidence of non-legitimate medical purpose to warrant submission of the case to the jury, and *a fortiori* at the close of all the evidence there was sufficient evidence to support the jury's verdict.

As indicated, the defendant testified in his own defense, and stated, in effect, that he had never prescribed drugs except for a legitimate medical purpose and in the usual course of professional practice. More specifically, he testified he had not done so in the case of either Ms. Christopher or Ms. Clark. Further, the defendant testified in some detail as to the importance of keeping complete medical records on all patients and indicated that his office did so.

After counsel had completed his direct examination of defendant, the prosecutor asked the district court for an order that the defendant produce his medical records on Christopher and Clark, claiming that he intended to use such in his cross-examination of defendant. Over objection, the district court granted this request and the records were produced. The prosecutor used these records in cross-examination of defendant and then the records were offered and received into evidence. Further, on rebuttal the prosecutor called an expert medical witness who testified concerning the medical records relating to Ms. Christopher. Reference to these records was also made by the prosecutor in his closing argument. There was no limiting instruction given the jury to the effect that the records, and the use thereof, were to be considered only for impeachment purposes.

■ We fail to perceive any reversible error in the use of the medical records. Even though prior to trial records seized in an illegal search are suppressed, such does not give a defendant free rein to thereafter take the stand and testify falsely. Records, previously suppressed, may be used by the prosecution to show that a defendant's testimony in court does not square with his own records. *United States v. Havens*, 446 U.S. 620, 627, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980) and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Here, the defendant testified on direct examination that he had given drug prescriptions to Ms. Christopher and Ms. Clark for legitimate medical purposes and the district court properly ruled that the prosecution could

use the defendant's records in an effort to impeach such testimony. Presumably, if the records had been supportive of defendant's testimony, they would have been offered by the defendant himself. In any event, there was no error in permitting the prosecution to use the records in an attempt to impeach the witness.

Defendant further argues on appeal that the prosecution used these records for much more than impeachment purposes and that in reality they were used as substantive evidence to prove essential elements of the crimes charged. In this particular regard, however, the defendant made no specific objections in the trial court. For example, though counsel objected to having to produce the records in the first instance, there was no objection to the government's witness using the records in connection with his rebuttal evidence. Nor was there any objection to the prosecutor's closing argument. This impeachment vis-a-vis substantive evidence argument was never made in the district court and only surfaced on appeal.

■ Further, even if these records were used for something more than impeachment purposes, we would decline to conclude that such amounted to plain error. Counsel failed to make timely and appropriate objections, and accordingly, any error in this regard would be recognized only if it seriously effected the fairness, integrity or public reputation of the judicial proceeding. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In this case, the records were properly admitted as evidence of impeachment and any error resulting from their possible substantive use was not so egregious as to require reversal. The defendant in his direct testimony stated that he had only prescribed drugs for Christopher and Clark for a legitimate medical purpose. The district court properly permitted the prosecutor to use defendant's own records in an effort to impeach that particular testimony. In this setting, impeaching defendant's testimony on the central issue in the case would of

necessity suggest that the opposite of his testimony was in fact the truth.

■ In this same connection, the trial court did not instruct the jury that defendant's medical records were being used for impeachment purposes only. However, counsel failed to submit such an instruction, and again, under the circumstances, we find no plain error. In this regard, *United States v. Bermudez*, 526 F.2d 89 (2d Cir.1975) is quite similar. At pages 96–97, the Second Circuit commented as follows:

IV. *Use of Excluded Evidence for the Purpose of Impeaching Diaz-Martinez's Credibility.* On March 27, 1974, the clothing store owned and operated by appellant Diaz-Martinez was searched pursuant to a warrant by agents of the Drug Enforcement Administration. Although no narcotics were found, a number of items used in the narcotics trade were seized. Upon appellant Diaz-Martinez's motion, the trial court suppressed these items on the ground that the description of the premises to be searched was unconstitutionally broad....

The court nevertheless allowed use of this evidence for impeachment of the testimony of Diaz-Martinez who had taken the stand in his own behalf. The appellants do not object to its admissibility for this limited purpose. In *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Supreme Court held that excluded evidence may become admissible for impeachment purposes where a defendant has "taken the stand and testified contrarily to the inculpatory information...." *Id.* The appellants' objection here is that the trial court, in its charge to the jury, erred in not telling the jury that they could not consider this evidence to determine whether Diaz-Martinez had committed the crime charged.

No such limiting instruction was given by Chief Judge Mishler, but none of the appellants made a request at trial that such a charge be given. In the absence of clear error by the trial court in its instructions, failure to make timely request for, or objection to, instructions to the jury waives all objections to the charge given. Fed.R.Crim.P. 30. Failure to give limiting instructions is generally held not to be plain error. *United States v. Bozza*, 365 F.2d 206, 214 (2d Cir.1966) (failure to include charge limiting purpose for which the jury could consider evidence of crime not charged in the indictment not plain error). [Cites omitted.]

Judgment affirmed.