**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DR. WILLIAM D. LEVITT,

Defendant - Appellant.

No. 98-2353
(D. Ct. No. CR-98-13-JC)
(D. N. Mex.)

---

**ORDER AND JUDGMENT** [*]

---

Before **TACHA**, **McWILLIAMS**, and **EBEL**, Circuit Judges.

Defendant appeals his conviction for issuing prescriptions without a legitimate medical purpose in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). He asserts that the district court's denial of his motion to obtain the personal medical files of two undercover agents violated both his due process rights and Rule 16 of the Federal Rules of Criminal Procedure. In addition, he claims that sufficient evidence did not exist for a jury to find him guilty. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Background

Upon receiving information that defendant, an osteopath, was prescribing narcotics illegally, the Drug Enforcement Administration and the New Mexico Attorney General's office sent undercover agents Lori Gallandt and Lou Kilgas to pose as patients at defendant's clinic. Gallant and Kilgas both had two appointments with defendant and audiotaped each of their visits.[1]

### A. Agent Gallandt

When Gallandt arrived at defendant's office, she completed a one-page form that did not ask for any medical information. Defendant began his examination by asking Gallandt if there was anything in her past medical history that he needed to know. Gallandt responded that there was nothing. Defendant then asked Gallandt if she had a drug or alcohol problem. Gallandt replied that she had been "doing a little bit of this and that." R. at 888. Defendant inquired whether Gallandt had ever had surgery or was taking any medications. Gallandt answered that she did not take legal medication, but she smoked cocaine each day. Defendant then indicated that he would treat Gallandt with valium to get her off the cocaine. At that point, Gallandt stated that she was hoping to get some demerol. Defendant asked Gallandt if demerol helped her. Gallandt responded, "They kick butt . . . I can really party on those." R. at 890. Defendant then

---

[1]Agent Kilgas's recording device failed on her first visit to defendant's office.

conducted a routine physical examination. Ultimately, defendant prescribed both demerol and valium for Gallandt.

Approximately one month later, Gallandt returned to defendant's office for a second visit. When defendant entered the examining room, Gallandt asked for "a couple more." R. at 896. Defendant refused to prescribe more demerol, but stated that he would prescribe more valium or another drug instead of demerol. Gallandt then requested a prescription for percoset. Defendant asked Gallandt if percoset helped her, and she replied that it did. Defendant examined Gallandt by listening to her heart with a stethoscope and gave her prescriptions for percoset and valium. The appointment lasted approximately five minutes.

### B. Agent Kilgas

When Kilgas arrived at the clinic, she also filled out a one-page form that did not ask for any medical information. Defendant began his examination of Kilgas by asking her a few questions about her medical history. Kilgas replied truthfully that she smoked and drank moderately and that she had had two prior surgeries, a cesarean section and a hysterectomy. Kilgas further explained that she had the hysterectomy three years ago after she was diagnosed with cancer. Kilgas stated that she began taking valium and percoset after the hysterectomy, that she had been buying the drugs on the street, and that she had heard from friends that defendant could help her. Kilgas specifically told defendant that she

- 3 -

was not in any pain and that she was taking the two drugs habitually. Defendant agreed to prescribe valium and percoset for Kilgas.

Defendant then briefly examined Kilgas by rubbing her back and neck, asking her to lie down, and pulling up her shirt. Kilgas pulled her shirt back down and defendant touched her stomach through her shirt. Defendant then gave Kilgas a prescription for valium and percoset. Defendant's examination of Kilgas lasted for no more than ten minutes.

During Kilgas's second visit to defendant's clinic, defendant entered the examining room and asked Kilgas how she was responding to her medications. Kilgas replied that her medications were working well and she needed to get more. Defendant conducted a brief physical exam and stated that he wanted Kilgas to taper off the drugs. He then gave Kilgas a prescription for percoset and valium. The entire appointment lasted approximately four minutes.

## II. Motion to Obtain Medical Records

### A. Brady Violation

Defendant contends that the district court violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), when it denied his motion to obtain Gallandt's and Kilgas's personal medical files. We review defendant's Brady claim de novo. Smith v. Secretary of N.M. Dep't of Corrections, 50 F.3d 801, 827 (10th Cir. 1995). Brady requires the prosecution to disclose exculpatory

evidence to the defense. Id. at 822 (citing Brady, 373 U.S. at 87; United States v. Buchanan, 891 F.2d 1436, 1440 (10th Cir. 1989)). To establish a Brady violation, defendant must prove "'1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material.'" Id. at 824 (quoting United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994)).

The first Brady element requires a defendant to demonstrate that the government had knowledge or possession of the disputed evidence, whether actual or constructive, and failed to disclose it. See United States v. Beers, __ F.3d __, No. 98-2250, 1999 WL 691656, at *6 (10th Cir. Sept. 7, 1999); Smith, 50 F.3d at 824-25. Defendant has presented no evidence to show that the government actually or constructively possessed or had any knowledge of the agents' personal medical records. Thus, defendant has failed to prove that the prosecution suppressed evidence. Furthermore, defendant cannot establish the second Brady element because he has offered no evidence to show that the agents' private medical files contain exculpatory evidence.

The third Brady element requires defendant to show that the agents' personal medical records contain evidence material to his defense. "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

- 5 -

A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Smith, 50 F.3d at 827 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). We "view[] the undisclosed evidence in relation to the record as a whole, as the materiality of exculpatory evidence will vary with the overall strength of the government's case." Moore v. Reynolds, 153 F.3d 1086, 1112 (10th Cir. 1998), cert. denied, 119 S. Ct. 1266 (1999).

Based upon our review of the record, we hold that there is no reasonable probability anything in the agents' personal medical files would have affected the outcome of defendant's trial. Defendant did not rely on Gallandt's and Kilgas's private medical records when he diagnosed and treated them. Consequently, the agents' personal records are irrelevant to defendant's conviction for illegally prescribing narcotics under these circumstances. Moreover, the overwhelming inculpatory evidence at trial showed that defendant prescribed narcotics for the agents even though they were not in pain and despite the fact that they admitted to using the drugs for nonmedical purposes. Thus, we conclude that the agents' private medical records are not material and there was no Brady violation in this case.

**B. Rule 16**

Defendant claims that the district court violated Fed. R. Crim. P. 16(a)(1)(D) when it denied his motion to obtain Gallandt's and Kilgas's medical

records. We disagree. Rule 16(a)(1)(D) provides that at defendant's request, the government must disclose "any results or reports of physical or mental examinations . . . which are within the possession, custody, or control of the government . . . and which are material to the preparation of the defense." We review a district court's discovery rulings for an abuse of discretion. United States v. Hernandez-Muniz, 170 F.3d 1007, 1010 (10th Cir. 1999).

Here, the agents' private medical records were not in the government's possession, custody or control. Furthermore, evidence is material under Rule 16 only if a defendant shows that the evidence would have altered the outcome of the trial. As our Brady discussion demonstrates, defendant in this case has made no such showing. Accordingly, the district court did not abuse its discretion in denying defendant's Rule 16 motion.

### III. Sufficiency of Evidence

Defendant asserts that the government introduced insufficient evidence to prove that he prescribed narcotics to the agents without a legitimate medical purpose. Even though defendant failed to move for judgment of acquittal at the close of all the proof, we review for plain error. United States v. Bowie, 892 F.2d 1494, 1496 (10th Cir. 1990). The standard we apply "is essentially the same as if there had been a timely motion for acquittal." Id. at 1497. Thus, in reviewing the sufficiency of the evidence, we ask whether, taking "'[t]he evidence – both direct

and circumstantial, together with the reasonable inferences to be drawn therefrom – . . . in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'"      Id. (quoting  United States v. Hooks , 780 F.2d 1526, 1531 (10th Cir. 1986)).

Here, ample evidence exists from which a jury could have found defendant prescribed narcotics without a legitimate medical purpose.  First, defendant prescribed narcotics for Gallandt and Kilgas based on incomplete medical histories and brief examinations.  Second, defendant prescribed demerol for Gallandt after she specifically asked for the drug and told him she could "really party" on it.  Defendant also prescribed percoset for Gallandt upon her request.  Gallandt's medical chart reflects that she complained of 1) moderate to severe lower back pain, 2) sleeplessness, 3) severe muscle spasms, 4) heavy alcohol consumption due to acute pain, 5) continued anxiety attacks, and 6) throbbing headaches.  However, Gallandt testified at trial that she never complained of any of these problems to defendant.  The transcripts of Gallandt's tape-recorded visits to defendant's office corroborate her trial testimony.  Furthermore, defendant admitted on cross-examination that he prescribed demerol for pain even though Gallandt never stated that she was in any pain.

Third, Kilgas's medical chart states that she complained of (1) stomach pain and cramps, (2) a three-year history of anxiety since her uterine cancer

- 8 -

diagnosis, and (3) difficulty sleeping. However, Kilgas testified at trial that she told defendant she came to his clinic because of her drug habit. Kilgas further testified that she was not suffering from any physical ailments when she saw defendant. Moreover, defendant admitted on cross-examination that Kilgas told him she had a drug habit. Nevertheless, defendant prescribed valium and percoset for Kilgas on two occasions.

Fourth, the government's expert testified that the narcotics defendant prescribed for the agents were not medically indicated. Finally, in the past we have found similar evidence sufficient to sustain convictions for issuing prescriptions without a legitimate medical purpose. See United States v. Jamieson, 806 F.2d 949, 950-51 (10th Cir. 1986); United States v. Varma, 691 F.2d 460 (10th Cir. 1982); United States v. Bartee, 479 F.2d 484, 485-86, 488-89 (10th Cir. 1973).

Thus, viewing the evidence in the light most favorable to the government, sufficient evidence exists to support the jury's guilty verdict. AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge