**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHERIE A. JOHNSON,

Defendant-Appellant.

No. 04-3014

(D. of Kan.)

(D.C. No. 03-CR-20013-04-JWL)

**ORDER AND JUDGMENT** *

Before **KELLY** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges. **

A federal jury in the District of Kansas convicted Sherie A. Johnson on three drug related charges. She was convicted of conspiracy to possess with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; aiding and abetting the distribution of 50 grams or more of crack cocaine in violation of 21 U.S.C. 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and maintaining a

---

* This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

** After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

dwelling for the purpose of distributing crack cocaine in violation of 21 U.S.C. § 856(a)(1). Following her conviction, Ms. Johnson filed a renewed motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, which the district court denied. This appeal followed.

On appeal, Ms. Johnson's counsel, who represented her at trial, filed a brief as permitted by *Anders v. California*, 386 U.S. 738 (1967), asserting there are no non-frivolous issues for this court to review and seeking permission to withdraw as appellate counsel. Ms. Johnson, proceeding pro se, urges this court to evaluate the record and address six allegations of error. For the reasons set forth below, we grant the motion to withdraw and dismiss the appeal.

**DISCUSSION**

*1. Sufficiency of the Evidence*

Ms. Johnson first challenges the sufficiency of the evidence supporting her convictions. "In making this argument, [Ms. Johnson is] faced with a high hurdle." *United States v. Voss*, 82 F.3d 1521, 1524 (10th Cir. 1996). In reviewing the sufficiency of the evidence to support a jury verdict, we review the record de novo "and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* at 1525 (citations and quotation

omitted).  We do not assess the credibility of witnesses or weigh conflicting evidence since these tasks are exclusively those of the jury.  *United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002).  We may reverse "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Brown*, 400 F.3d 1242, 1247 (10th Cir. 2005) (citations and quotation omitted).

## A.

To prove a conspiracy to possess with the intent to distribute narcotics in violation of 21 U.S.C. § 846, the government had to prove the following elements: (1) an agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged coconspirators.  *United States v. Riggins*, 15 F.3d 992, 994 (10th Cir. 1994) (citation omitted).  The jury may infer an agreement constituting a conspiracy "from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose."  *United States v. Johnson,* 42 F.3d 1312, 1319 (10th Cir. 1994).  The jury is also entitled to "presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy."  *United States v. Brown*, 995 F.2d 1493, 1502 (10th Cir. 1993) (citations and quotation omitted), overruled on other grounds by *United States v.*

*Prentiss*, 256 F.3d 971 (10th Cir. 2001). As to the interdependence prong, the government need only show a defendant's actions "facilitated the endeavors of other coconspirators or facilitated the venture as a whole." *United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992) (citations omitted). Thus, "[a] defendant's connection to a conspiracy may be slight, as long as the government proves defendant's knowing participation." *Id.*

In this case, it is abundantly clear that a rational trier of fact could have concluded Ms. Johnson knew the essential objectives of the conspiracy and voluntarily became a part of it. As presented by the government, Ms. Johnson's father, Donald Johnson, Sr., and her brother, Donald Johnson, Jr., led a conspiracy to manufacture and distribute crack cocaine. The evidence against these two co-defendants was overwhelming. Donald Johnson, Jr. pled guilty to the conspiracy, and a jury convicted Donald Johnson, Sr. Another coconspirator, James Gaskin, also pled guilty. In the words of an experienced officer that testified at Ms. Johnson's trial, this drug conspiracy was "probably the biggest" he had ever investigated.

Regarding the evidence against Ms. Johnson, Gaskin testified that Donald Johnson, Sr. would set aside quantities of crack cocaine for her to distribute. This happened, according to Gaskin, "quite a few times" when Ms. Johnson was living at a home on 1515 Wood in Kansas City. She also allowed this residence to be

used by her coconspirators to "cook" powder cocaine into crack, although Ms. Johnson herself did not participate in the cooking process. According to Gaskin, each member of the conspiracy had a defined role, and Ms. Johnson's role was to distribute crack to her own clientele. On several occasions, in fact, Gaskin purchased crack from Ms. Johnson which he subsequently distributed to others. Ms. Johnson also lent her car in furtherance of the conspiracy. Ms. Johnson's brother, Donald Jr., used her car on several occasions to pick up and transport packages containing powder cocaine. In addition to Gaskin's testimony, Brian Faulkner, a confidential informant, testified that he observed Ms. Johnson sell crack cocaine to several individuals at her residence on 1515 Wood, and that on one occasion she told Faulkner that "soup" (meaning crack) would be cooked that night.

In sum, in addition to testimony that Ms. Johnson directly participated in distributing crack, she also facilitated the conspiracy through the use of her residence and car. We therefore hold that the testimony given at trial, when viewed in the light most favorable to the government, easily establishes that Ms. Johnson participated in the conspiracy to manufacture and distribute crack cocaine.

B.

To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove the defendant (1) possessed a controlled substance, (2) knew she possessed a controlled substance, and (3) intended to distribute the controlled substance. *United States v. Jenkins*, 175 F.3d 1208, 1216 (10th Cir. 1999) (citation and quotation omitted). Even if there was not evidence that Ms. Johnson herself distributed more than 50 grams of crack cocaine, a jury could still convict under aider and abetter liability. 18 U.S.C. § 2. "To be guilty of aiding and abetting, a defendant must willfully associate with the criminal venture and aid such venture through affirmative action." *United States v. Jones*, 44 F.3d 860, 869 (10th Cir. 1995). "The evidence that supports a conviction for conspiracy can also be used to support a conviction for aiding and abetting in the possession of illegal narcotics with intent to distribute." *United States v. Gallo*, 927 F.2d 815, 822 (5th Cir. 1991) (citation omitted).

In this case, the facts established that Ms. Johnson directly participated in crack distribution and that her actions affirmatively aided distribution by others. In addition to the facts discussed above, Faulkner testified regarding a controlled purchase set up by law enforcement officials. Faulkner attempted to contact Donald Johnson, Sr. to arrange for the purchase of 60 grams of crack. Faulkner

contacted Ms. Johnson in an attempt to locate her father. During their conversation, which was taped and introduced into evidence, Faulkner asked Ms. Johnson whether she was "playing basketball," a code phrase for selling crack. As a result of this conversation, Faulkner came to Ms. Johnson's residence at 1515 Wood and completed a purchase from Donald Johnson, Sr. Ms. Johnson was present throughout the course of the transaction. Therefore, we hold that a reasonable jury could find her guilty on the drug distribution charge beyond a reasonable doubt .

## C.

Finally, 21 U.S.C. § 856(a)(1) makes it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." In order to convict a defendant of this charge, the prosecution must prove that she (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing a controlled substance. *United States v. Higgins*, 282 F.3d 1261, 1276 (10th Cir. 2002) (citation omitted).

Both Gaskin and Faulkner testified that Ms. Johnson's primary residence was the house at 1515 Wood. Additionally, the government introduced school enrollment forms and free lunch applications for Ms. Johnson's two children. These documents, signed by Ms. Johnson, indicated the children lived with their mother at 1515 Wood. Therefore, notwithstanding the fact that the residence was

owned by Donald Johnson, Sr., the evidence sufficiently established that Ms. Johnson resided there. Furthermore, as discussed above, the evidence established that the residence was used to cook crack cocaine and as a place from which crack was distributed. We therefore hold the government provided sufficient evidence to convict under § 856(a)(1).

## 2. *Admissibility of Photographs*

Ms. Johnson next argues the district court erred in admitting two photographs of packaged cocaine that belonged to a non-defendant, Van Spears. At trial Ms. Johnson's counsel objected to the photographs on relevancy grounds, which was overruled by the district court. We review evidentiary objections for abuse of discretion. *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994).

Here, the district court did not abuse its discretion in admitting the photographs. Gaskin testified at length regarding how the Johnsons obtained powder cocaine and cooked it into crack for distribution. He stated that Van Spears was the Johnsons' source of cocaine, and that Donald Jr., often using Ms. Johnson's car, made regular trips to Van Spears' house to purchase cocaine. The photographs at issue depicted packaged cocaine seized by law enforcement officers during a raid of Van Spears' house. At Ms. Johnson's trial, the government used the photographs to show that the packaging found during Van Spears' raid matched packaging that was seized in connection with the Johnsons'

conspiracy. Thus, by establishing the source of the Johnsons' cocaine, the photographs were relevant to the creation of the conspiracy, its scope, and the actions taken by Ms. Johnson's coconspirators in furtherance of the conspiracy. *See United States v. Mendoza-Salgado*, 964 F.2d 993, 1006–07 (10th Cir. 1992) (actions taken by coconspirators in furtherance of conspiracy are relevant under Fed. R. Evid. 401).

    *3. Admissibility of Free Lunch Form*

    Ms. Johnson also challenges the admission into evidence of a school lunch form that she signed in January 2003, approximately one month after the conclusion of the conspiracy alleged in the superceding indictment. Ms. Johnson's counsel objected to the admission of this exhibit on relevancy grounds. Again, we find the district court did not abuse its discretion in admitting the exhibit.

    The government used the school lunch form to establish that Ms. Johnson maintained the residence at the 1515 Wood for purposes of 21 U.S.C. § 856(a)(1). The district court overruled the objection, noting "the law is clear that something that occurs after a particular date is still relevant as to whether the fact was in existence before that date." We need not address the issue in this fashion, however, because the school lunch form was not the government's only evidence. The government also introduced school enrollment documents that were signed

and dated by Ms. Johnson in August 2002, which was within the conspiracy dates alleged in the superceding indictment. Ms. Johnson's counsel conceded at trial that these documents were admissible. Gaskin and Faulkner also testified that Ms. Johnson used 1515 Wood as her primary residence. Thus, even if it was error to admit the school lunch forms, we would hold that such error was harmless. *See United States v. Vaughn*, 370 F.3d 1049, 1051–52 (10th Cir. 2004) (evidentiary errors reviewed for harmless error).

*4. Improper Witness Statements Regarding Truthfulness*

Ms. Johnson's next allegation of error relates to the following testimony by coconspirator Gaskin during direct examination by the government:

Q:     What's your understanding if you provide information that's not truthful or that we establish you're not telling the truth about?

A:     Then the plea agreement is no good. It would be withdrawn.

Q:     Okay. And throughout the debriefing, throughout any testimony you've provided in this case, have you provided truthful and accurate information to the best—

Counsel:     Objection; self serving, your Honor. May we approach?
The Court:     No, you may not. Overruled.

Q:     Have you provided truthful and accurate information?

A:     Yes, I have, to the best of my ability.

According to Ms. Johnson, the district court should have excluded this testimony because Gaskin improperly bolstered his own testimony, which, she

-10-

alleges, invades the province of the jury. It is true, of course, the prosecution may not vouch for the credibility of its witnesses. *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990). It is equally true, however, that presenting evidence of a witness's obligation to testify truthfully pursuant to an agreement with the government is not, by itself, improper vouching. *Id.* Impermissible vouching occurs "only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Id.* (citations omitted). Such was not the case here. In this case, the government did not vouch for Gaskin's veracity, but merely solicited statements in an attempt to preempt Ms. Johnson's argument that Gaskin had an incentive to embellish or even lie in order to obtain more favorable treatment. Gaskin's statements did not invade the province of the jury, and the district court did not abuse its discretion in allowing such testimony.

5. *Hearsay Statement of Donald Johnson, Sr.*

Ms. Johnson also contends the district court erred in allowing out-of-court statements made by her father, Donald Johnson, Sr. The following colloquy occurred during Gaskin's direct testimony:

Q:     Do you have personal knowledge about where [Ms. Johnson] would get her crack?

A:      Yes.

Q:      Where did she get her crack?

A:      From her father.

Q:      And how is it that you would know that?

A:      Because he would have to set aside what he was going to take, and he would say this was what he was taking to Ms. Johnson.

        Counsel:      Objection as to hearsay.

The district court overruled the objection, noting the statements were properly admitted under Fed. Rule of Evid. 801(d)(2)(E). This Rule establishes that a statement is not hearsay if it is made by "a coconspirator of a party during the course and in furtherance of the conspiracy." Interpreting this Rule, we have held that a coconspirator's statements are properly admitted where the court finds by a preponderance of evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994) (citation and quotation omitted). In overruling the hearsay objection, the district court noted that a preponderance of the evidence established the declarant, Donald Johnson, Sr., was involved in a drug distribution conspiracy with Ms. Johnson and others. Thus, the court ruled

that the testimony was proper under Rule 801(d)(2)(E), and we agree. The district court did not err in admitting the statements made by Donald Johnson, Sr.

### 6. *Transcript of Recorded Conversation*

Finally, Ms. Johnson alleges the district court erred in allowing the jury to see written transcripts of certain recorded conversations. At trial, the court allowed the government to play audio tapes of Faulkner's recorded conversations with Ms. Johnson and Donald Johnson Sr. The court also allowed the government to present transcripts of these conversations. According to Ms. Johnson, introduction of the written transcripts violated her constitutional rights because the tapes themselves were frequently inaudible and the transcripts were inaccurate. Prior to playing the tapes, the district court instructed the jury as follows:

> Now, the evidence is what you hear on the tapes. What has been put on the transcript is simply counsel for the prosecution's best attempt to decipher what they think they have heard and attempt as accurately as possible to put that down in the transcript. But if you listen to that tape and you can't make out what it says, then you should not simply accept what the transcript says as accurate. You're the one—you're the triers of fact; you're the ones that have to decide what the tape says, not the government or the judge or the defendant. So you have to listen to the tape. Similarly, if you listen to the tape and you think the tape says something different from what the transcript says, again, you are to be guided by the tape, not the transcript. . . . So for that limited purpose I will admit Exhibit 104 to be used as demonstrative evidence.

"The admission of transcripts to assist the trier of fact . . . lies within the

discretion of the trial court." *United States v. Devous*, 764 F.2d 1349, 1354 (10th Cir. 1985) (citation omitted).  Cautionary instructions are instrumental to the analysis of whether the district court has abused its discretion with respect to written transcripts.  *See United States v. Davis,* 929 F.2d 554, 559 (10th Cir. 1991).  In light of the detailed cautionary instruction given in this case, we cannot say the district court abused its discretion in admitting the transcripts.  *Hale v. Gibson*, 227 F.3d 1298, 1325 (10th Cir. 2000) (juries are presumed to have followed instructions).

## CONCLUSION

For the aforementioned reasons, counsel's motion to withdraw is GRANTED and we DISMISS the appeal.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge