The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Marcus Wayne **PIGFORD**, Defendant–Appellant.

No. 99CA0132.

Colorado Court of Appeals, Div. II.

July 6, 2000.

Certiorari Denied Feb. 5, 2001.*

* Justice MARTINEZ would grant as to the following issues:

Whether the court of appeals, in contravention of *Stone v. People*, 485 P.2d 495 (Colo. 1971), erred by concluding that the police officer's "stop" order did not constitute a "seizure" for constitutional purposes.

Whether, by concluding that the officer conducted only an "investigatory stop" and not an "arrest", the court of appeals established a new and unconstitutional definition of an "investigatory stop."

▆▆▆▆▆▆▆ ☜━63.4(1)

▆▆▆▆▆▆▆ ☜━63.5(4)

▆▆▆▆▆▆▆ ☜━68(2)

Ken Salazar, Attorney General, Victoria V. Johnson, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Marcus Wayne Pigford, appeals the judgment of conviction entered on a jury verdict finding him guilty of criminal attempt to commit first degree criminal trespass and possession of burglary tools. We affirm.

Defendant's principal contention is that the court erred by denying his motion to sup-

press certain statements and evidence. He also asserts that the court erred by denying his challenge to a potential juror, and maintains that part of the prosecutor's opening statement constituted prosecutorial misconduct which violated his right to a fair trial.

## I.

In support of his assertion that his motion to suppress should have been granted, defendant contends that, when the police officers stopped him, they lacked a reasonable suspicion of criminal activity, and that when they arrested him, they lacked probable cause to do so. We do not agree.

Here, based on supporting evidence, the trial court made the following findings of fact at the suppression hearing. In the late evening hours a police officer was driving past an after-hours medical clinic. He observed defendant attempting to conceal himself by ducking behind a vehicle in the parking lot. The officer made a U-turn and drove back to the parking lot to investigate the situation.

There he observed defendant with his body halfway inside a car on the passenger's side. Defendant exited the vehicle, shut the door, and started walking away. The officer shouted, "Stop. I want to talk to you."

At that point, defendant began to run from the scene. The officer did not pursue defendant, but rather he informed other officers by radio that defendant was running away. He gave the other officers a description of defendant.

A second police officer heard the radio message and saw defendant running rapidly through the parking lot of another business. This officer exited his vehicle with his gun drawn and ordered defendant to stop. Defendant did not stop, but continued to move away from the officer.

A police dog, released by a third officer, then pulled defendant to the ground. The second officer holstered his gun and handcuffed defendant. A pat-down search of defendant disclosed a screwdriver in his pocket.

After defendant was treated for dog bites, he was placed in a police vehicle. Defendant then stated, "The car was unlocked. I did not take anything." This statement was not in response to any questions.

Based on these facts, the trial court found the first officer had a reasonable suspicion that defendant was engaged in criminal behavior. It further found there was probable cause to arrest defendant when he failed to obey the first officer's order to stop, which was a violation of a city ordinance. Accordingly, it then denied defendant's motions to suppress evidence and statements. We agree with the trial court's holding, and thus affirm, but on a different basis. *See People v. Holmes,* 959 P.2d 406 (Colo.1998)(if ruling is correct it will be affirmed even if analysis is in error).

Police-citizen contacts are of three general types: arrests or full-scale searches; investigative stops or limited searches; and consensual contacts. *People v. Archuleta,* 980 P.2d 509 (Colo.1999). An arrest must be based on probable cause to believe the person has committed, is committing, or is about to commit a crime. *People v. Holmberg,* 992 P.2d 705 (Colo.App.1999). Investigatory stops must be justified by a reasonable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

To meet constitutional standards an investigatory stop must be "brief in duration, limited in scope, and narrow in purpose." *People v. Tottenhoff,* 691 P.2d 340, 343 (Colo. 1984).

Police may undertake intermediate intrusions such as investigatory stops consistent with the Fourth Amendment as long as three conditions are satisfied: (1) there is a specific and articulable basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur (that is, 'reasonable suspicion'); (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion are reasonably related to its purpose.

*People v. Archuleta, supra,* 980 P.2d at 512.

The determination of whether reasonable suspicion exists focuses on whether, based on the totality of the circumstances, there are specific, articulable facts known to the officer which, taken together with rea-

sonable inferences from those facts, create a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security. *People v. Salazar*, 964 .P.2d 502 (Colo.1998). Objective observations of a person's "nervous or unduly cautious behavior" may be considered as part of the totality of the circumstances. *People v. Ramirez*, 1 P.3d 223, 225–26 (Colo.App.1999).

■■ Flight alone does not support reasonable suspicion of criminal activity. *People v. Archuleta, supra.* However, flight is a significant factor in evaluating the totality of the circumstances. "Headlong flight—whenever it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 576 (2000). A police officer's pursuit of a fleeing person does not constitute a seizure absent any physical contact with the person or evidence that the person yielded to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

■■ A police officer may use reasonable measures to ensure his or her own safety during an investigatory stop. If it is reasonable under the circumstances, a police officer drawing a gun does not change an investigatory stop into an arrest. *People v. Archuleta, supra.* Neither does handcuffing or placing a person in a police car automatically transform a stop into an arrest. *People v. Bland*, 884 P.2d 312 (Colo.1994); *U.S. v. Tilmon*, 19 F.3d 1221 (7th Cir.1994). However, the police should use the least intrusive means reasonably possible during an investigative stop. *U.S. v. Tilmon*, supra.

■ The analysis of an investigatory stop must focus on whether the police conduct, in light of all the circumstances, was reasonable, and not on the degree of force used. "We should not ask whether the force used was so great as to render it an arrest but, instead, whether the force used was reasonable." *United States v. Merritt*, 695 F.2d 1263, 1274 (10th Cir.1982).

Here, an investigatory stop of defendant did not occur until the second officer actually detained defendant. The police pursuit of

defendant up to that point did not constitute a seizure. *See California v. Hodari D., supra.*

■■ The first officer's observations of the defendant ducking behind a vehicle in a parking lot late at night and defendant's subsequent flight were sufficient to raise a reasonable suspicion justifying an investigatory stop. *People v. Archuleta, supra.* The second officer who actually detained defendant also had reasonable suspicion based upon the fellow officer rule. *See People v. Freeman*, 668 P.2d 1371 (Colo.1983) (an officer who does not personally· possess sufficient information to constitute probable cause may nevertheless make a valid arrest if he or she acts upon the direction or as a result of a communication from a fellow officer, and the police, as a whole, possess sufficient information to constitute probable cause).

■ The manner of defendant's detention had many characteristics normally associated with a full arrest. In most circumstances, placing a person in handcuffs would constitute an arrest. However, under the circumstances of this case, defendant's actions necessitated methods beyond the usual investigatory stop. Here, although extensive, the scope and character of the intrusion were reasonably related to its purpose. The police purpose in detaining defendant, investigation of his possible illegal entry into an automobile, could not be accomplished until defendant was stopped and brought into contact with the officer who had the information justifying the detention.

Defendant refused to stop despite demands from two police officers at two different locations. In fact, defendant continued to flee until actual physical force was applied to bring him to a stop. These circumstances show that using force to stop the defendant, handcuffing him, and placing him into the police vehicle were necessary in order to detain him. *See People v. Ornelas*, 937 P.2d 867 (Colo.App.1996) (holding that police may handcuff a defendant to prevent his flight during execution of a search warrant).

■ The officer's display of his weapon was also reasonable in effecting the detention

of the defendant. The identity of the defendant was unknown to the police, it was late at night, and defendant had refused to comply with the officers' lawful commands to stop. Under these circumstances, the display of the weapon was a reasonable precaution for the safety of the officer. *See People v. Archuleta, supra,* and *U.S. v. Tilmon, supra.*

We conclude that the methods used by the police were reasonable, and under the circumstances, they were the least intrusive means possible to detain the defendant. The use of force did not convert this investigatory stop into a full arrest. We hold that once a police officer has acquired the legal privilege to conduct an investigatory stop, he or she may employ those coercive tactics that are reasonable under the totality of the circumstances, such as display of weapons, use of handcuffs, confinement in a vehicle, and physical force, in order to effect the stop in a manner which assures safety for the officer, the public, and the person stopped.

Having lawfully detained defendant, the police then developed probable cause to arrest him. Directly following defendant's detention, the first officer learned defendant did not have the owner's permission to enter the automobile. At that time the officers had probable cause to arrest the defendant based on the following information: (1) the first officer's observations in the medical clinic parking lot; (2) the defendant's flight; (3) the unsolicited statements of the defendant in the police car; and (4) the owner's statement that defendant did not have permission to enter the motor vehicle.

Accordingly, we affirm the court's order denying the defendant's motion to suppress evidence and statements.

## II.

Defendant next argues that the court erred by denying his challenge to a prospective juror. We are not persuaded.

Before *voir dire,* the court reviewed the prospective juror's answers to a questionnaire and became aware of his hearing problem. The court inquired about the juror's ability to hear, informed the juror a microphone would be used during the trial, and

asked the juror if he thought he was going to have difficulty hearing the proceedings. The juror responded by saying, "Probably not, no." During *voir dire,* the juror had trouble hearing on one occasion, and stated that he had not heard the response of another juror. At the conclusion of *voir dire,* defendant challenged the juror for cause, asserting that the juror was unable to hear adequately.

Section 13–71–104(3)(b), C.R.S.1999, provides that a person with a disability is eligible for jury service unless the court finds that the person's disability prevents the person from performing the duties and responsibilities of a juror. When there is a challenge based upon physical disability, a trial court has discretion to determine whether the challenged juror can adequately perform.

Absent an abuse of discretion, a trial court's decision will not be disturbed upon review. *People v. Janes,* 942 P.2d 1331 (Colo.App.1997). A trial court's resolution of a challenge for cause will be overturned only if the record presents no basis to support it. *People v. Harlan,* 8 P.3d 448, 461–62 (Colo. 2000).

Here, the trial court's inquiry, and the prospective juror's responses, do not indicate an "[i]nability, by reason of a physical or mental disability, to render satisfactory juror service." Section 13–71–105(2)(c), C.R.S. 1999. Hence, we perceive no abuse of discretion.

## III.

Defendant asserts that the prosecutor made improper remarks during opening statement. Defendant argues that the evidence at trial did not support the prosecution's statements, and, therefore, he was denied his right to a fair trial by an impartial jury. We disagree.

The prosecutor stated that the defendant had stolen from a sympathetic victim, a mother who had driven her two sick children to the after-hours medical clinic in order to receive medical assistance. The prosecutor stated that the defendant waited for an "opportune time" to "steal from somebody when they were ... most vulnerable." Defendant

objected on grounds of relevancy, and the trial court overruled the objection.

The facts developed at trial showed that the victim was at a medical clinic seeking care for her children when she left her vehicle unlocked in the parking lot. Defendant trespassed by entering the vehicle while the victim was inside the clinic. It is a reasonable inference from this evidence that the defendant took advantage of this opportunity to attempt to steal from the victim's vehicle. The prosecutor may draw inferences from the evidence in his or her argument to the jury. *People v. Erickson*, 883 P.2d 511 (Colo.App.1994). Under these circumstances, we conclude that the prosecutor's opening statement did not constitute misconduct, and the defendant was not deprived of a fair trial.

Accordingly, the judgment is affirmed.

Judge PLANK and Judge TAUBMAN concur.