The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Chad Patrick COUGHLIN, Defendant–Appellant.

No. 09CA0947.

Colorado Court of Appeals, Div. II.

April 28, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge LOEB.

Defendant, Chad Patrick Coughlin, appeals the judgment of conviction entered upon jury verdicts finding him guilty of attempted second degree murder, second degree assault, and fighting in public. We affirm.

## I. Background and Procedural History

The charges in this case arose from a physical altercation that occurred in the parking lot of a sports bar. Around 1 a.m. on May 4, 2008, one of the bar's bouncers, P.S., drove his SUV into the parking lot entrance. P.S. encountered defendant, defendant's girlfriend, and a male friend standing in the entrance, and therefore, he was required to drive around the group to reach a parking spot.

Once he parked, P.S. was approached by defendant's girlfriend, and the two exchanged heated words through the open driver's side window. Although the details of the encounter between P.S. and defendant's girlfriend were disputed at trial, the girlfriend ended up falling backwards onto the ground. Defendant does not dispute that, at this point, he borrowed a knife from the friend and approached the SUV.

A fight broke out between defendant and P.S., resulting in P.S. tackling defendant to the ground. P.S. repeatedly punched defendant in the face, and defendant stabbed P.S. multiple times with the knife, once in his neck, three times in his back, and once in his arm. Another employee of the sports bar, a cook who had just finished his shift, witnessed the fight from the back deck of the bar and promptly ran over to pull P.S. off of defendant. Defendant and his friend, who did not participate in the fight, then fled the scene.

The prosecution charged defendant with attempted first degree murder and second degree assault based on P.S.'s injuries. The friend was charged with accessory to attempted murder for lending defendant the knife, and he ultimately pleaded guilty to the charge in exchange for probationary sentences in this case and in two additional pending cases. As a condition of the friend's plea agreement, the friend was required to testify against defendant.

At trial, nearly all of the facts surrounding the fight were hotly disputed, and the testimony from P.S., the friend, the girlfriend, and the cook was often conflicting. According to the prosecution's theory of the case, defendant first stabbed P.S. through the open driver's side window of the SUV and continued to stab P.S. when P.S. jumped out of the vehicle and tackled defendant to the ground. Defendant did not testify at trial, but according to the defense theory of the case, all stab wounds were inflicted in self-defense, only after P.S. pinned defendant to the ground and began punching him in the face.

At the conclusion of a three-day trial, the jury found defendant guilty of attempted second degree murder (which the court submitted to the jury after dismissing the attempted first degree murder charge), second degree assault, and the lesser nonincluded offense of fighting in public. The court sentenced defendant to a twenty-year prison term, a ten-year prison term, and a six-month jail term for the respective offenses, to run concurrently, and to five years mandatory parole. This appeal followed.

## II. Challenge for Cause

Defendant contends the trial court abused its discretion by denying his challenge for cause to prospective juror D. We disagree.

We review a trial court's ruling on a challenge for cause to a prospective juror for an abuse of discretion. *Carrillo v. People*, 974 P.2d 478, 485 (Colo.1999). This is a "very high standard of review" that gives deference to the trial court's assessment of the credibility of prospective jurors. *Id.* at 485–86. "It recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing those judgments based on a cold record." *Id.* at 486. A trial court's resolution of a challenge for cause will only be overturned if the record presents no basis to support it. *People v. Pigford*, 17 P.3d 172, 177 (Colo.App.2000).

Before the prosecution began its voir dire, the court administered an oath to the entire jury pool and read aloud several grounds that would prevent a prospective juror from serving. The court specifically asked, "Are any of you incapable by reason of physical or mental disability of rendering satisfactory jury service?" One prospective juror responded by advising the court of his diabetic condition and his "very severe hearing problem and understanding." The court then asked if there was "[a]nybody else." No one responded. The court finished with its preliminary questions of the entire pool and seated twenty-two prospective jurors in the jury box. Those jurors who were not initially seated, including juror D, were nevertheless advised to "pay attention to what's going on" because of the likelihood that additional prospective jurors would be called to the jury box.

Midway through voir dire, the court excused five seated prospective jurors and called five replacements, including prospective juror D. The court asked general questions of the five replacements and then invited each juror to tell counsel a bit about his or her background. Prospective juror D explained that he currently worked for King Soopers, that he was retired from construction work, and that he had three adult children. His juror questionnaire corroborated this information. He also told the court, "I watch lot [sic] of television and some things I forget. . . . And I listen to radio."

The prosecutor's entire questioning of juror D was as follows:

Q: All right, thank you. Mr. [D], I'm going to go out on a limb here and guess that you don't really want to be up in the jury box?

A: Right. I get confused with things.

Q: All right. So you think that it may be difficult for you to follow the evidence presented in this case?

A: Yeah, I [sic] would be.

Q: Are you comfortable telling me what you think would cause you confusion?

A: No.

Q: That's fair.

Defense counsel followed up on the prosecutor's questioning of prospective juror D as follows:

Q: Mr. [D], I wanted to ask you a couple of questions. You said you have trouble following things sometimes?

A: I get confused about things.

Q: You get confused about things?

A: Yeah.

Q: In this trial we're going to have people on the witness stand who are testifying, who are saying things. Do you think that you're going to be able to remember what people say and then be able to talk about it later on?

A: No.

Q: Okay. I think you told the DA that you don't feel comfortable talking about why?

A: Yes.

Q: Would you feel more comfortable outside the other jurors present?

A: No.

Q: You just don't feel comfortable talking to anybody about why?

A: Yeah.

Q: Okay. Are you feeling physically okay today?

A: Sometimes I get cramps all in my body and I can't handle it.

Q: When you're in trial here you're going to have to sit for, you know, a couple of days at the time. Is that going to be a problem for you?

A: Yep; uh-huh.

Q: Okay, thank you.

Shortly after this exchange, defense counsel completed voir dire of the replacement jurors and challenged prospective juror D for cause. The entirety of the challenge for cause was as follows:

Mr. [D], but just on the ability to sit as a juror in a case particularly of this length.

The court denied the challenge for cause, stating that "applying the standard in 13–71, I don't believe that is met as to Mr. [D]."

On appeal, defendant contends the trial court abused its discretion by denying his challenge for cause to prospective juror D,

because he expressed an inability to follow the evidence and a difficulty sitting down for "a couple of days at a time." Defendant further contends that, because he used a peremptory challenge to excuse prospective juror D and later exhausted his remaining peremptory challenges, the court's denial of his challenge for cause requires automatic reversal of his convictions. We perceive no error.

## A. Preservation

Initially, we address the People's argument that defendant failed to preserve for appellate review his contention that prospective juror D should have been excused due to his inability to follow the evidence.

■ Defendants who believe a challenge for cause should or should not be granted have an obligation to make their positions known. *People v. Asberry*, 172 P.3d 927, 930 (Colo.App.2007). "[I]t is incumbent upon the challenging party to clearly state of record the particular ground on which a challenge for cause is made. Only in this way can the court and opposing counsel direct appropriate questions to the juror to determine whether the challenge is well taken." *People v. Cevallos–Acosta*, 140 P.3d 116, 121 (Colo. App.2005) (quoting *People v. Russo*, 713 P.2d 356, 361 (Colo.1986)). All challenges for cause to prospective jurors must be raised in the trial court prior to the swearing in of the jury to try the case. *See* Crim. P. 24(b)(2).

Based on our review of defendant's challenge to prospective juror D, we perceive no indication that the challenge was grounded on his purported inability to follow the evidence or on any other mental deficiency that might have interfered with his ability to serve as a juror.

■ To the contrary, the challenge for cause to juror D was expressly limited to his physical well-being. After learning from juror D that (1) he could have trouble remembering the evidence, and (2) he sometimes got cramps throughout his body, counsel moved to challenge juror D for cause "but just on the ability to sit as a juror in a case particularly of this length." Given the specific wording of this challenge for cause, we

conclude that counsel was referring to the last portion of voir dire where she inquired into juror D's physical health and followed up with the question: "When you're in trial here you're going to have to sit for, you know, a couple of days at the time. Is that going to be a problem for you?"

Thus, counsel articulated a single ground for the challenge for cause to prospective juror D—an alleged physical disability—and we decline to address for the first time on appeal a different ground that was not clearly brought to the attention of the trial court and opposing counsel. *See, e.g., Cevallos–Acosta*, 140 P.3d at 121 (declining to address for the first time on appeal a challenge to a juror because he was an employee of a public law enforcement agency when defendant's only challenge to this juror at trial was that the juror would give special weight to the testimony of a police officer); *People v. Coleman*, 844 P.2d 1215, 1218 (Colo.App.1992) (declining to address a challenge to a juror based on actual prejudice when the record demonstrated the sole ground for defendant's challenge to this juror at trial was that she was a compensated employee of a public law enforcement agency).

## B. Merits

Defendant contends the trial court abused its discretion by denying his challenge for cause to prospective juror D, because prospective juror D stated that he would have a physical problem sitting through the trial. We disagree.

Under the Colorado Uniform Jury Selection and Service Act, "[j]uror service is a duty that every qualified person has an obligation to perform when selected." § 13–71–104(1), C.R.S.2010. A person with a physical disability is obligated to serve as a juror subject to three limited statutory exceptions. § 13–71–104(3)(b), C.R.S.2010.

First, a person shall not serve if he or she is disqualified based on an "[i]nability, by reason of a physical or mental disability, to render satisfactory juror service." § 13–71–105(2)(c), C.R.S.2010 (providing as a guideline that "[a] person shall be capable of rendering satisfactory juror service if the person

is able to perform a sedentary job requiring close attention for three consecutive business days for six hours per day, with short breaks").

Second, a person shall not serve if jury service would cause him or her "undue or extreme physical hardship." § 13–71–119.5(2), C.R.S.2010 (limiting "undue or extreme physical hardship" to circumstances in which the juror would suffer physical hardship possibly resulting in illness or disease).

Third, a person shall not serve if "the court finds that such person's disability prevents the person from performing the duties and responsibilities of a juror." § 13–71–104(3)(b)(II), C.R.S.2010.

 When there is a challenge based on a physical disability, a trial court has discretion to determine whether the challenged juror can adequately perform, and we will not disturb the court's determination if it finds support in the record. *Pigford,* 17 P.3d at 177.

Here, aside from juror D's isolated statement, "Sometimes I get cramps all in my body and I can't handle it," and his affirmative response to counsel's question of whether sitting for "a couple days at a time" would pose a problem, there is no indication in the record that juror D had a physical disability that would prevent him from serving as a juror. Juror D did not provide the court with any paperwork to indicate that he had a physical disability that would prevent him from rendering satisfactory jury service. *See* § 13–71–105(2)(c). Nor did he respond when the court asked of the entire jury pool, "Are any of you incapable by reason of physical or mental disability of rendering satisfactory jury service?" Juror D also declined counsel's invitation to speak in private about his concerns about his ability to serve as a juror. Further, in telling the court about his background, juror D stated that he was retired from construction and currently employed by King Soopers.

Because there is record support for the court's denial of defendant's challenge for cause to juror D, *see Pigford,* 17 P.3d at 177, and because the court is in the best position to assess the credibility, demeanor, and body

language of juror D, *see Carrillo,* 974 P.2d at 486, we will not disturb the court's denial of defendant's challenge for cause on appeal. Because we perceive no error in the court's resolution of the challenge for cause to juror D, we need not address the parties' arguments concerning whether any error would be reversible per se under *People v. Macrander,* 828 P.2d 234 (Colo.1992).

### III. Improper Vouching

Defendant contends the trial court violated his rights to due process and a fair trial, and, thus, reversibly erred, by allowing the prosecutor to elicit the terms of the friend's plea agreement on direct and redirect examination because the questioning of the friend constituted improper vouching. We are not persuaded.

We review a trial court's rulings on evidentiary issues for an abuse of discretion. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002).

██ Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion. *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo. 2005) (addressing prosecutor's statements during closing argument); *see also Liggett v. People,* 135 P.3d 725, 733 (Colo.2006) (addressing prosecutor's questions of a witness in addition to comments during closing argument). While a trial court has the initial responsibility to determine if the prosecutorial misconduct influenced the jury's verdict or otherwise undermined the fundamental fairness of the proceedings, we, as an appellate court, review counsel's arguments to avoid a miscarriage of justice. *Domingo–Gomez,* 125 P.3d at 1050.

#### A. Preservation

We initially reject the People's argument that defendant did not preserve this contention for appellate review.

 "In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record." *Am. Family Mut.*

*Ins. Co. v. DeWitt,* 218 P.3d 318, 325 (Colo. 2009) (citing CRE 103(a)(1)). A proper objection affords the trial court an opportunity to focus on the issue and hopefully avoid the error. *Id.* Even if an objection to evidence does not specifically identify the rule underlying the objection, it is nonetheless sufficient to preserve an issue for appeal if the objecting attorney presents arguments or utilizes language that alerts the trial court to the impending error. *Id.*

■ Here, defense counsel twice objected to the prosecutor's questioning of the friend regarding the terms of his plea agreement on the ground of improper "bolstering." Now on appeal, defendant contends the questioning constituted improper "vouching."

Although bolstering and vouching are technically different concepts—a prosecutor improperly bolsters a witness's testimony by implying that the testimony is corroborated by evidence known to the state but not the jury, and a prosecutor improperly vouches for a witness's credibility by indicating a personal belief in the witness's credibility or by implying that the prosecutor has special knowledge of facts not in front of the jury— the concepts are closely related in that they both concern a prosecutor's reliance on extraneous evidence to imply a witness's veracity on the stand. *See, e.g., United States v. Francis,* 170 F.3d 546, 550–51 (6th Cir.1999) (differentiating between bolstering and vouching). Indeed, some courts merge or interchange the concepts. *See United States v. Bowie,* 892 F.2d 1494, 1499 n. 1 (10th Cir.1990) (collecting cases).

We, therefore, conclude that the language of counsel's objections in this case sufficiently alerted the trial court to the error now alleged on appeal regarding the prosecutor's use of the friend's plea agreement. Accordingly, defendant's contention was properly preserved for our review.

### B. Merits

■ In *People v. Racheli,* 878 P.2d 46 (Colo.App.1994), a division of this court addressed the issue of whether a prosecutor may elicit testimony during direct examination regarding the provisions of a witness's plea agreement with the government requiring truthful testimony. After acknowledging a split of authority on this issue, the division adopted the rule followed by a majority of the federal circuit courts and state courts, under which such testimony is not improper if (1) the prosecutor has not appeared to express a personal opinion about the witness's credibility, or (2) the prosecutor has not appeared to possess information unavailable to the jury. *Id.* at 47–48; *see also Bowie,* 892 F.2d at 1498 ("Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness's credibility, either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony."). The division reasoned that such a rule allows the fact finder to consider all pertinent factors surrounding the plea agreement in assessing the credibility of the witness. *See Racheli,* 878 P.2d at 47–48. We find such reasoning persuasive and, therefore, apply the standard adopted by the division in *Racheli* to this case.

### 1. Direct Examination

■ We first reject defendant's contention that the prosecutor's questioning of the friend during direct examination was improper vouching. Shortly after the friend was called to testify, the following exchange took place:

Q: Tell the jury your understanding of the plea bargain?

A: To testify honestly in this trial.

. . . .

Q: I think you said that part of the agreement here was that was there an agreement that the DA would recommend probation in this case?

A: Yes.

Q: Was it a condition on certain things that you had to do?

A: Yes.

Q: What were those things—what are those things?

A: To testify honestly in this case.

Q: If you were to minimize the defendant's role in this case would that be truthful or untruthful?

A: Untruthful.

. . . .

Q: If you exaggerated his role in this occurrence would that be in your view truthful or untruthful?

A: Untruthful.

Q: If you minimized your role in what happened would that be truthful or untruthful?

A: Untruthful.

Q: If you exaggerated your role would that be truthful or untruthful?

A: Untruthful.

In our view, this exchange does not constitute improper vouching for the friend's credibility. The prosecutor neither expressed a personal opinion about the friend's credibility nor appeared to possess information unavailable to the jury. *See Racheli,* 878 P.2d at 48. The prosecutor questioned the friend regarding the friend's understanding of his obligation to testify truthfully under his plea agreement. The prosecutor's methodical questioning as to whether the friend would view testimony as "truthful or untruthful" merely fleshed out the friend's understanding of what it means to tell the truth.

Accordingly, we conclude that the court did not abuse its discretion by admitting this testimony during direct examination. *See, e.g., United States v. Magallanez,* 408 F.3d 672, 680 (10th Cir.2005) (not improper for prosecutor to reveal the language of a plea agreement that includes the witness's obligation to testify truthfully); *Bowie,* 892 F.2d at 1499 (not improper for prosecutor to elicit testimony that reveals a witness's obligation to tell the truth and the consequences of a breach of that obligation).

### 2. Redirect Examination

We also reject defendant's contention that the prosecution's questioning of the friend during redirect examination constituted improper vouching. During redirect, the prosecutor returned to the subject of the friend's plea agreement, and the following exchange took place:

Q: And you agreed with [defense counsel's] assertion that to get the deal in this case you had to testify in this case[,] all you had to do was get up and say whatever you wanted, does that fulfill your agreement?

A: No.

Q: How do you have to testify?

A: I have to tell the truth.

. . . .

Q: If you lie to this jury what might happen, what do you expect to happen?

A: I go to prison for 43 and a half years.

Q: If you were to lie about what happened[,] is that something you would expect us to figure out? Do you think we can tell? You think we would be able to tell if you're not truthful?

A: Yes.

. . . .

Q: Is the bottom line you got to tell the truth?

A: Yes.

To the extent that the prosecutor elicited testimony about the friend's understanding of his obligation to tell the truth and of the consequences of breaching that obligation by lying to the jury, we conclude that such questioning is permissible under our case law. *See Racheli,* 878 P.2d at 47–48 (no error to allow prosecutor to ask informant if he is telling the truth, if he is lying, and if he knows that the plea agreement requires him to "continue to give truthful testimony or the deal is off").

However, the following questions by the prosecutor present a much closer call:

Q: If you were to lie about what happened[,] is that something you would expect us to figure out? Do you think we can tell? You think we would be able to tell if you're not truthful?

Nevertheless, we conclude that these questions were permissible as well.

 A prosecutor may question a witness about a plea agreement requiring truthful testimony so long as the prosecutor does not appear to possess information unavailable to the jury. *Id.* at 48. The "[u] se of the

'truthfulness' portions of these agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness's testimony." *Bowie*, 892 F.2d at 1498. In other words, a prosecutor's statements only become impermissible vouching where they "amount to guarantees concerning the veracity of the witnesses." *United States v. Jones*, 468 F.3d 704, 708 (10th Cir.2006).

Thus, jurisdictions that follow a rule similar to *Racheli, Bowie*, and *Jones* have found impermissible vouching where the prosecutor indicates to the jury that the witness's testimony has been or can be independently verified by another source. *See, e.g., United States v. Hilton*, 772 F.2d 783, 785–86 (11th Cir.1985) (improper for prosecutor to state that witnesses were credible because they agreed, pursuant to their plea agreements, to take polygraph examinations); *United States v. Roberts*, 618 F.2d 530, 534 (9th Cir.1980) (improper for prosecutor to state that a detective was in the courtroom in order to monitor the truthfulness of an immunized witness's testimony).

Likewise, impermissible vouching has been found where the prosecutor indicates to the jury that he or she has personally verified the witness's testimony, thereby putting the state's stamp of approval on the testimony. *See, e.g., United States v. Binker*, 795 F.2d 1218, 1227 (5th Cir.1986) (improper to admit plea agreement that stated that the government had in fact verified the witness's statements); *Mitchell v. State*, 549 P.2d 96, 99–100 (Okla.Crim.App.1976) (improper for prosecutor to refer to prior meeting at which the witness was told to tell the truth); *State v. Swims*, 212 W.Va. 263, 569 S.E.2d 784, 794 (2002) (improper to admit plea agreement indicating the state will request safe placement for witnesses because it implies that the state agrees with witnesses' claims that testifying truthfully would put them in danger).

■ However, a prosecutor does not impermissibly vouch for a witness by indicating that he or she might be able to verify the testimony. *See State v. Gentile*, 75 Conn. App. 839, 818 A.2d 88, 95 n. 2 (2003) (not improper for prosecutor to question witness about cooperation agreement and to specifically ask witness, "[Y]ou realize that, should I come to find out that you didn't tell the truth, you're going to be the guy in [the defendant's chair] next, right?"). Nor is it impermissible vouching to indicate that, prior to trial, a witness has gone though a proffer to gauge truthfulness. *See Jones*, 468 F.3d at 708 (such statements regarding proffers do not meet standard for vouching because they do not amount to guarantees of a witness's veracity when actually called to the stand).

■ Taking guidance from these cases, we conclude that the prosecutor in this case did not impermissibly vouch for the credibility of the friend. The prosecutor did not tell the jury that the friend's testimony could be independently verified by the state or any other source. In essence, the prosecutor never guaranteed the truthfulness of the friend's testimony to the jury. *See id.* At most, the jury heard what the friend perceived about the government's ability to find out whether he was being truthful. It was for the jury to assess the friend's credibility, including his promise to testify truthfully, his motives for testifying, and his belief that the state could independently verify his testimony. *See Racheli*, 878 P.2d at 48 (by admitting a plea agreement requiring truthful testimony, the jury can fully consider the possible conflicting motives underlying the witness's testimony and more accurately assess the witness's credibility); *see also Bowie*, 892 F.2d at 1499 (although a cooperation agreement contains an obligation to tell the truth, the witness may be testifying solely to obtain the benefits of the agreement and may tailor his or her testimony accordingly).

We caution against prosecutors using questions that, as here, approach the boundary of impermissible vouching. Nevertheless, because the prosecutor in this case did not indicate that he possessed outside information or that he could guarantee the friend's truthfulness, and because the admission of testimony is committed to the trial court's discretion, we perceive no error.

## IV. Credibility Jury Instructions

Defendant contends the court reversibly erred by (1) failing to give the stock jury instruction regarding the limited use of the friend's prior felony convictions, and (2) failing to give a specific jury instruction regarding the limited use of the friend's guilty plea. We reject each contention in turn.

■ It is the duty of the trial court to instruct the jury on all matters of law. *People v. Garcia,* 28 P.3d 340, 343 (Colo.2001). The instructions shall be read to the jury before closing arguments so that counsel is afforded the opportunity to comment on the instructions during argument and to tailor his or her argument to the instructions that will actually govern the jury's deliberations. Crim. P. 30; *People v. Bastin,* 937 P.2d 761, 764 (Colo.App.1996).

■ Counsel has a correlative duty to object to defective or deficient instructions and to request and tender correct instructions and instructions that have been overlooked by the court. *People v. Sharpe,* 183 Colo. 64, 69, 514 P.2d 1138, 1140 (1973); *People v. Zapata,* 759 P.2d 754, 755 (Colo. App.1988), *aff'd,* 779 P.2d 1307 (Colo.1989).

### A. Stock Jury Instruction

Defendant contends his convictions must be reversed because the court failed to give the stock jury instruction regarding consideration of a witness's felony convictions. We disagree.

Because defendant properly preserved this contention, we apply a harmless error standard of review. *See Garcia,* 28 P.3d at 344. Under this standard, reversal is required unless the error does not affect the substantial rights of the defendant. *Id.* "[W]here the error is not of constitutional dimension, the error will be disregarded if there is not a reasonable probability that the error contributed to the defendant's conviction." *Id.* (quoting *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000)).

At the close of the evidence in this case, the court asked both parties to review the proposed jury instructions. The prosecutor did not object to the instructions, and, as pertinent to this issue, stated that he "[was] going to provide an instruction on the use of ... prior felony convictions as relates [sic] to credibility, if defense wishes."

The stock instruction regarding felony convictions states:

> The credibility of a witness may be discredited by showing that the witness has been convicted of a felony. A previous conviction is one factor which you may consider in determining the credibility of the witness. You must determine the weight to be given to any prior conviction when considering the witness's credibility.

CJI–Crim. 4:07.

The court responded to the prosecutor as follows:

> Well, I think what we'll do, we don't have the impeachment by felony conviction instruction in this package because neither side has submitted it, so I'll simply allow the parties to argue that. Limit your argument to what the law says and I don't know that we need an instruction, if I allow the argument so.

Defense counsel also told the court that she did not object to the instructions (with the exception of the self-defense instruction). Counsel then mentioned that the felony conviction stock instruction would be coming from the prosecutor.

The court again stated that, because neither party had submitted the stock instruction, the parties would instead be allowed "to argue the substance of the instructions."

At this point, defense counsel specifically asked the court to instruct the jury with the standard credibility instruction regarding felony convictions.

The court repeated for a third time that the instruction would not be given because neither party submitted it, but the parties would be allowed to "accurately argue the law concerning the use of a felony conviction as it bears on credibility."

Despite the court's permission to do so, neither party argued the substance of the stock instruction during closing argument.

■ Assuming, without deciding, that the court's failure to give the requested stock

instruction constituted error, *see Lee v. People*, 170 Colo. 268, 277, 460 P.2d 796, 800 (1969); *People v. Garcia*, 981 P.2d 214, 216 (Colo.App.1998), we conclude that any error was harmless under the specific circumstances of this case. In our view, there is not a reasonable probability that the court's instructional omission contributed to defendant's convictions where defense counsel declined the court's repeated invitation to argue the stock instruction during closing argument and where neither party made reference to the friend's plea agreement or prior felony convictions during closing argument. Accordingly, reversal is not required.

### B. Specific Jury Instruction

Defendant contends his convictions must be reversed because the court failed to give sua sponte a jury instruction on the limited permissible use of the friend's guilty plea. Specifically, defendant contends that such an instruction should have advised the jury that the friend's guilty plea could not be used as substantive evidence of defendant's guilt. We perceive no plain error justifying reversal.

Because defendant did not request this specific instruction in the trial court, we review only for plain error. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005). Plain error is obvious and substantial error that "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at 750 (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)). "[W]ith respect to jury instructions, reversal under a plain error standard requires a defendant to 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.'" *Garcia*, 28 P.3d at 344 (quoting *Bogdanov v. People*, 941 P.2d 247, 255–56 (Colo.1997)).

In *People v. Montalvo–Lopez*, 215 P.3d 1139 (Colo.App.2008), a division of this court held that a defendant's failure to request a limiting instruction on how the jury should consider a codefendant's guilty plea, or failure to offer such an instruction, did not, then, place a duty on the trial court to give one sua sponte. Accordingly, the division held that the court's instructional omission was not plain error. *Id.* at 1145.

We find the division's reasoning and holding in *Montalvo–Lopez* persuasive, and similarly conclude that the trial court's failure here to give a specific limiting instruction on the appropriate use of the friend's guilty plea does not rise to the level of plain error. If the trial court has no duty sua sponte to give such a limiting instruction, then we fail to see how the absence of the instruction would be an error "both obvious and substantial" or a grave error that "seriously affect[s] substantial rights of the accused." *People v. Barker*, 180 Colo. 28, 32, 501 P.2d 1041, 1043 (1972) (quoting *Wright v. United States*, 301 F.2d 412, 414 (10th Cir.1962)).

In any event, the court's failure to give a limiting instruction does not constitute plain error under the circumstances here, where the jury was given a credibility instruction that applied to all of the witnesses and where neither party mentioned the friend's guilty plea in closing argument. *See Montalvo–Lopez*, 215 P.3d at 1145; *People v. Brunner*, 797 P.2d 788, 790 (Colo.App.1990). Accordingly, reversal is not required.

## V. No–Retreat Jury Instruction

Defendant contends the court reversibly erred by refusing to give his tendered instruction on the doctrine of no-retreat. We disagree.

### A. Standard of Review and Applicable Law

It is the duty of the trial court to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving an instruction. *Cassels v. People*, 92 P.3d 951, 955 (Colo.2004); *Garcia*, 28 P.3d at 343. A defendant is entitled to an instruction on a particular affirmative defense when he or she raises some credible evidence to support it. *Cassels*, 92 P.3d at 955. However, the court should not instruct on an abstract principle of law unrelated to the issues in controversy. *People v. Laurson*, 15 P.3d 791, 794 (Colo.App.2000).

 When considering whether a defendant is entitled to a particular requested instruction, we consider the evidence in the light most favorable to the defendant. *Cassels*, 92 P.3d at 955. Whether sufficient evidence exists to support the requested instruction is a question of law that we review de novo. *See People v. Hill*, 934 P.2d 821, 826 (Colo.1997). Where, as here, a defendant properly objects to a jury instruction or the trial court refuses to give a tendered instruction, we apply a harmless error standard on review. *Garcia*, 28 P.3d at 344, 348.

 Under Colorado's current statutory scheme, a person is justified in using physical or deadly force upon another in self-defense or defense of a third person only under certain conditions. *See* § 18–1–704, C.R.S.2010; *People v. Toler*, 9 P.3d 341, 347 (Colo.2000). Colorado, like many jurisdictions, has adopted the doctrine of no-retreat, which "permits non-aggressors who are otherwise entitled to use physical force in self-defense to do so without first retreating, or seeking safety by means of escape." *Cassels*, 92 P.3d at 956 (citing *Toler*, 9 P.3d at 350–51). Only initial aggressors must retreat before using force in self-defense. *Id.*

 Our case law consistently holds that where, as here, the record contains any credible evidence tending to establish the affirmative defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense. *See id.; Idrogo v. People*, 818 P.2d 752, 754 (Colo.1991). Moreover, the self-defense instructions must be tailored to the particular circumstances of the case in order to adequately apprise the jury of the law of self-defense from the standpoint of the defendant. *Cassels*, 92 P.3d at 956. Thus, as the supreme court held in *Cassels:*

A defendant is entitled to a jury instruction on the doctrine of no-retreat when the facts of the case raise the issue of retreat and the evidence supports a jury finding that the defendant was not the initial aggressor.

*Id.*

A jury instruction on the doctrine of no-retreat is necessary under such circumstances because the jury might question the reasonableness of the defendant's use of force when he or she had the alternative option of seeking safety by means of escape. *Id.* In other words, "failure to instruct the jury on the doctrine of no-retreat in cases where the defendant was not the initial aggressor creates a risk that the jury will not acquit the defendant because it will consider the defendant's use of force unreasonable in light of the possibility of retreat." *Id.* A standard self-defense instruction that tracks the language of the statute does not adequately communicate the doctrine of no-retreat to the jury. *Id.*

### B. Application

In this case, the trial court concluded that the evidence warranted giving a self-defense instruction, and it instructed the jury as follows:

It is an affirmative defense to the offenses charged in this case that the defendant used or threatened the use of physical force upon another person in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person. In so doing, the defendant may use a degree of force which he reasonably believes to be necessary for that purpose.

Notwithstanding the above, however, a person is not justified in using physical force if:

(a) with intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or

(b) he is the initial aggressor; except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force.

In determining whether defendant acted in self defense, or in defense of a third person, you should weigh all of the relevant circumstances to determine whether

the defendant has acted as a reasonable person would act in similar circumstances.

This instruction tracked the language of Colorado's self-defense statute. *See* § 18–1–704.

However, the trial court refused defendant's request to give the following additional instruction on the doctrine of no-retreat:

A person is entitled under the law to exercise his right to defense of another without attempting to retreat or flee. A person has the right to stand his ground when confronted by another who he reasonably believes to be threatening or assaulting him or another person.

In rejecting defendant's tendered instruction, the court reasoned as follows:

The Court will not give the instruction because the Court believes that the correct statement of the law [of] self-defense in our state is contained in the instructions which I have written.... [T]he law [of] self-defense in our state has been codified by the legislature and it was the intent of the legislature [to] codify the general principles which many of these defense instructions attempt to state and I think the current law is that the Court should refrain from instructing the jury on general principles of law and restrict its instructions to the actual law itself.

Also I'm concerned that defense tendered number 1 [on the doctrine of no-retreat], does not properly state the law because an individual's right to stand and not flee is limited under our self-defense statute so the Court will not give the defense tendered number 1 believing that the correct law in this point is set forth in the self-defense instructions which I'm going to give.

On appeal, defendant contends the court reversibly erred by declining to give his tendered jury instruction on the doctrine of no-retreat. Under the circumstances of this case, we perceive no error.

Initially, we note that evidence adduced at trial could have supported a jury finding that defendant was not the initial aggressor. Defendant's girlfriend testified that P.S. got out of his car and pushed her to the ground. Likewise, the cook, who observed most of the incident, testified that P.S. pushed his car door open, which then caused the *girlfriend* to fall back to the ground. However, other evidence, including P.S.'s own testimony, supported a contrary finding that defendant was the first person to use physical force in this fight. Because the evidence was at best conflicting on the question of who was the initial aggressor, this question was properly submitted to the jury. *See Toler*, 9 P.3d at 353–54.

Nevertheless, defendant is not automatically entitled to a no-retreat jury instruction simply because the question of who was the initial aggressor was properly submitted to the jury. Under *Cassels*, the facts of the case must also "raise the issue of retreat" in order to warrant such an instruction. *Cassels*, 92 P.3d at 956. Upon our review of the record, we conclude that the facts of this case do not "raise the issue of retreat."

Under defendant's theory of the case, he inflicted all stab wounds to P.S. in self-defense, after P.S. pinned him to the ground. However, defendant's theory does not raise the issue of retreat. If, as defendant argues, he was actually pinned by P.S., who is a trained fighter, then defendant would not physically be able to retreat, and a reasonable juror would not question why defendant used force to protect himself instead of running away. Thus, there was no risk that "the jury [would] not acquit the defendant because it [would] consider the defendant's use of force unreasonable in light of the possibility of retreat." *Id.*

This case is, therefore, distinguishable from other cases where the defendant was entitled to a no-retreat instruction because of a legitimate concern that a juror would question the defendant's use of physical, or even deadly, force over the option of retreating to safety. *See, e.g., id.* at 958 (facts raise the issue of retreat because they suggest the defendant could have run away or barricaded himself in the bedroom instead of using deadly force); *Garcia*, 28 P.3d at 348 (facts raise the issue of retreat where wife killed husband with an ax instead of running out of bedroom); *Idrogo*, 818 P.2d at 756 (facts raise the issue of retreat where they suggest that the defendant could have run away in-

stead of engaging in a fistfight with and ultimately stabbing the victim).

There was also evidence presented at trial from which a juror could conclude that P.S. was the initial aggressor when he shoved the girlfriend and that defendant stabbed P.S. through the SUV window in defense of the girlfriend. However, this "defense of another" theory also does not raise the issue of retreat. A juror would not question why defendant chose to use physical force instead of retreating because defendant could not have protected the girlfriend by retreating. *See People v. Reed,* 695 P.2d 806, 808 (Colo. App.1984) (issue of retreat not raised, and therefore trial court properly refused a no-retreat instruction, where wife shot at husband who was holding daughter by the neck against her will).

Nor do the parties' opening statements or closing arguments at trial raise the issue of retreat as an alternative to physical force so as to warrant the additional jury instruction requested by defendant. *Cf. Cassels,* 92 P.3d at 958 (prosecutor's characterization of events raises issue of retreat where it suggests to jury that the defendant could have escaped but chose to engage in violence instead).

Accordingly, because the facts and arguments in this case did not raise the issue of retreat, we conclude that the court did not err by refusing to give defendant's tendered no-retreat instruction.

The judgment is affirmed.

Judge FOX and Judge PLANK * concur.